UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

| | | |
|---|---|---|
| PERSONAL SERVICES CONTRACTOR ASSOCIATION, | ) | |
| No address | ) | |
| | ) | |
| *Plaintiff,* | ) | Case No. 1:25-cv-___ |
| | ) | |
| v. | ) | |
| | ) | |
| DONALD TRUMP, President of the United States of America, | ) | |
| 1600 Pennsylvania Avenue NW | ) | |
| Washington, DC 20050 | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF STATE, | ) | |
| 2201 C Street NW, Washington, DC 20520 | ) | |
| | ) | |
| UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, | ) | |
| 1300 Pennsylvania Ave. NW, | ) | |
| Washington, DC 20523 | ) | |
| | ) | |
| MARCO RUBIO, Secretary of State and Acting Administrator of the United States Agency for International Development, | ) | |
| 2201 C Street NW, Washington, DC 20520 | ) | |
| | ) | |
| OFFICE OF MANAGEMENT AND BUDGET, | ) | |
| 725 17th Street NW, Washington, DC 20503 | ) | |
| | ) | |
| RUSSELL VOUGHT, Director, Office of Management and Budget, | ) | |
| 725 17th Street NW, Washington, DC 20503 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| PETE MAROCCO, Acting Deputy Administrator for Policy and Planning and for | ) | |

Management and Resources for USAID and          )
Director of Foreign Assistance at the           )
Department of State,                            )
1300 Pennsylvania Ave. NW                       )
Washington, DC 20004                            )
                                                )
                    *Defendants.*                )
_____

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### I.    NATURE OF THIS ACTION

1.    This action seeks to enjoin defendants and their officers, employees, and

agents from:

    (a)    Suspending foreign aid assistance, including under Executive Order 14169
(Jan. 20, 2025) ("the Foreign Assistance EO");

    (b)    Enforcing or otherwise giving effect to Sections 1, 5, 7, 8, and 9 of the
Secretary of State's January 24, 2025 communique to all diplomatic and
consular posts (the "ALDAC"), 25 STATE 6828;

    (c)    Taking any other steps to dismantle USAID, cripple its operations, or
transfer its functions to the State Department without Congressional
authorization.

### II.    JURISDICTION AND VENUE

2.    This Court has jurisdiction over the parties and the claims asserted here

under 28 U.S.C. § 1331 and 28 U.S.C. § 1361.

3.    Venue is proper in this district because a substantial part of the giving rising

to the claims here occurred in this judicial district. 28 U.S.C. § 1391(e).

### III.   PARTIES

4.      Plaintiff **Personal Services Contractor Association** (the PSC Association) is a voluntary association of U.S. citizen personal services contractors (USPSCs) employed by USAID. USAID employs approximately 1,100 USPSCs, of whom approximately 46% are stationed overseas. Membership in the PSC Association is open to all USPSCs. Originally formed in 1999 as an employee resource group for U.S. citizen personal services contractors (PSCs) employed by USAID, today the group has an active membership in the hundreds and operates as a voluntary association independent from USAID.

5.      Defendant **Donald Trump** is the President of the United States and issued the Foreign Assistance Executive Order. Plaintiff sues President Trump in his official capacity.

6.      Defendant **United States Department of State** is a federal agency headquartered in Washington, DC, with responsibility for United States foreign relations and foreign policy.

7.      Defendant **USAID** is a federal agency headquartered in Washington, DC, with responsibility for international development and humanitarian assistance, created by President Kennedy in 1961 and later established as an independent agency by Congress in 1998. Since 1998, Congress has repeatedly appropriated funds for USAID as an independent agency.

8.     Defendant **Marco Rubio** is the Secretary of State and is the highest-ranking official within the Department of State and the Acting Administrator of USAID and highest-ranking official within USAID. Plaintiff sues Secretary Rubio in his official capacity. On January 24, 2025, Secretary Rubio issued an order freezing federal foreign assistance funding and stopping work.

9.     Defendant **Peter Marocco** is the Acting Deputy Administrator for Policy and Planning and Acting Deputy Administrator for Management and Resources for USAID and Director of Foreign Assistance at the Department of State. Since January 30, 2025, Marocco has managed the day-to-day operations at USAID, including personnel matters. Plaintiff sues Acting Deputy Administrator Marocco in his official capacity.

10.     Defendant **OMB** is a federal agency headquartered in Washington, DC, with responsibility for overseeing the management of federal financial assistance. OMB was directed by Defendant Trump to implement the Foreign Assistance Executive Order.

11.     Defendant **Russell Vought** is the Director of OMB and is the agency's highest-ranking official. Plaintiff sues Director Vought in his official capacity.

## IV.   FACTS

**A.   The U.S. Agency for International Development (USAID)**

12.     USAID was established in 1961 to implement components of the Foreign Assistance Act of 1961 (FAA, P.L. 87-195). Subsequently, section 1413 of the Foreign

Affairs Reform Restructuring Act of 1998 (Division G of P.L. 105-277) established USAID as an "independent establishment," 5 U.S.C. § 104, outside of the State Department. 22 U.S.C. § 6563. USAID is a Congressionally created agency. Presidential authority to reorganize USAID expired in 1999. Today, the President has no authority to abolish, move, or consolidate USAID without Congressional authorization.

13.    Congress appropriates funds for USAID programs and operations in annual State, Foreign Operations and Related Programs (SFOPS) appropriations. Nearly all USAID programs are authorized through the Foreign Assistance Act. To use funds appropriated to USAID for purposes not specified in SFOPS appropriations, which have the force of law, the Administration is required to notify and consult with Congress in advance. (FY 2024 SFOPS; § 7063 of Division F of P.L. 1818-47).

**B.    USAID Personal Services Contractors (USPSCs)**

14.    U.S. citizen personal services contractors (USPSCs) perform inherently governmental functions for USAID. They are U.S. Government employees, a status recognized by the Federal Acquisition Regulations, among other sources. 48 C.F.R. 37.104.

15.    USPSCs fill numerous roles that are essential to USAID's operations, including acting as contracting and agreement or award officers (as CORs and AORs).

16.    USAID employs approximately 1,100 USPSCs, of whom approximately 46% are stationed overseas.

17.     USPSCs make up a majority of the staff in USAID's Bureau for Humanitarian Assistance, which oversees aid that includes food, water, shelter, emergency healthcare, sanitation and hygiene, and critical nutrition services.

18.     USPSCs also make up a substantial portion of the staff of USAID's Office of Transition Initiatives, which promotes peace and democracy, including in countries transitioning from authoritarianism to democracy or from violence to peace.

19.     Many USPCs have long tenures, even decade(s)-long careers as USPSCs for USAID, performing the same critical work as USAID "direct-hire" civil service employees.

20.     USAID Acquisition Regulations (AIDAR) specifically provide that "U.S. citizen personal services contractors (USPSCs) *may be delegated or assigned any* authority, duty, or responsibility delegable to U.S. citizen direct-hire employees." AIDAR Appendix D, § 4(b) (emphasis added).

21.     USPSCs fill numerous roles that are essential to USAID's operations. USPSCs often do the same work done by foreign service officers (FSOs), who are represented by the American Foreign Service Association (AFSA), and by other federal civilian employees represented by the American Federation of Government Employees (AFGE).

## C.    Executive Order 14169 (the Foreign Assistance EO)

22.     On January 20, 2025, President Trump issued EO 14169, the Foreign Assistance EO, purporting to "pause" all United States foreign development assistance

6

for 90 days, with the added proviso that expenditures "may resume" only if the Director of the OMB—defendant Russell Vought—says so.[1]

23. Four days later, on January 24, 2025, the Secretary of State issued a communique to all diplomatic and consular missions—known as an "ALDAC"—implementing the Foreign Assistance EO. The ALDAC ordered that "effective immediately," "no new obligations" shall be made for foreign assistance; that contracting officers should issue "stop-work orders" for all existing foreign assistance awards; and that the federal government would "suspend" review of all proposals for new foreign assistance, grants, subgrants, contracts, or subcontracts. As a result, according to USAID's Inspector General, "all USAID programs were suspended, including those with funds already obligated and disbursed." https://oig.usaid.gov/node/7439 [https://perma.cc/9X7M-MDEC] (last visited February 18, 2025).

**D.    IRREPARABLE HARMS**

24. The result of the EO, the ALDAC, and the stop-work orders has been, and remains, havoc, turmoil, and mayhem.

25. The EO, the ALDAC, and the stop-work orders are preventing the PSC

---

[1] Foreign aid distributed through USAID represents the majority of the money the federal government spends on foreign aid every year, but foreign aid represents a small fraction of the total federal budget – less than 1.2% of the total federal budget. https://www.pewresearch.org/short-reads/2025/02/06/what-the-data-says-about-us-foreign-aid/ (last visited February 18, 2025).

Association's members (as well as AFSA's and AFGE's members) from carrying out the work for which their positions were created and exist by law and from overseeing often lifesaving humanitarian relief, including not only medicine, medical services, food, and shelter but also counter-narcotics, anti-human trafficking, and anti-terrorism operations.

26.    As this complaint is being filed, USPCs are being irreparably injured, by, among other injuries, both threats to and actual losses of: (1) essential communication tools and network access, endangering their personal safety and security and the safety and security of their family members; (2) water and electricity for their homes overseas, which embassies normally provide but are not currently providing due to the funding freeze implemented in the Foreign Assistance EO and the ALDAC, and because the payment system is broken; (3) eviction from their homes overseas; (4) a lack of stable and adequate housing and access to health care for USPCs repatriated to the United States; (5) disrupted medevac arrangements for pregnant USPCs in the third trimester of their pregnancy and their dependents; (6) broken trust and relationships that USPSCs have built with "implementing partners" on the ground worldwide over decades; (7) injury to their reputations and good names; and (8) doxing of their private information by the "Department of Government Efficiency" (DOGE).

27.    Even if the EO, the ALDAC, and the stop-work orders are ultimately revoked, each passing day is increasingly jeopardizing USPSCs' ability to resume foreign aid, maybe ever again, at levels qualitatively or quantitatively comparable to before.

28.    Any claim that the Defendants have merely "paused" foreign development assistance is a pretext. On February 2, 2025, Elon Musk held a live session on X Spaces, in which he said that he'd spoken in detail about USAID with President Trump, who "agreed we should shut it down," referred to USAID as "beyond repair" and avowed, "We're shutting it down," and "It's time for it to die," while celebrating having spent the weekend "feeding USAID into the wood chipper." Defendant Vought has bragged that he wants federal workers "to be traumatically affected …. We want their funding to be shut down …We want to put them in trauma."

29.    Without prior consultation with Congress, defendants have, *among other things*: (1) precipitously frozen billions in Congressionally appropriated funding; (2) made progress toward their goal of shrinking a USAID workforce of more than 10,000 by ninety percent and absorbing the remnants into the State Department; (3) removed the metal letters spelling "U.S. Agency for International Development" from the agency's headquarters and evicted the agency from its headquarters; (4) barred USAID employees, including USPSCs, from entering headquarters; (5) issued precipitous evacuation orders for USAID employees, including USPSCs; (6) locked USAID workers, including USPSCs, out of their U.S. Government email accounts and other USAID computer systems; (7) ceased payments for overseas employees' rent and utilities, including USPSCs' rent and utilities, putting them in a position where they risk eviction; (8) ceased reimbursing USAID employees, including USPSCs, for thousands of

dollars of already incurred covered expenses; (9) risked medical care for employees, including pregnant women in the third trimester of their pregnancies;  and (10) devastated humanitarian assistance worldwide.

30.   The Defendants' aim is not to pause foreign aid. It is to devastate and eliminate it and the federal agencies, employees, and contractors who provide it.

31.   The impact around the world of freezing foreign aid funding and stopping foreign aid programs has been and remains calamitous. As examples, and many, many more could be given, shipments of in-kind food assistance have been delayed. Because of stop-work orders, more than 500,000 metric tons of American farmers' food commodities valued at more than $340 million are stranded at U.S. ports, in transit, and in warehouses, at risk of spoilage, unanticipated storage needs, and diversion. Meanwhile, in South Sudan, 60 percent of the population is extremely food insecure, and one in four children under five is suffering from severe acute malnutrition, while in the Democratic Republic of Congo, 4.5 million children under the age of five are facing acute malnutrition.

32.   While direct-hire employees have been placed on administrative leave, USPSCs have in many cases received no information about their status, while finding themselves cut off from all USAID computer networks and locked out of USAID headquarters. Some USPSCs have been informed they have been terminated—but without the minimum notice required by their contracts, without any explanation of

"convenience to the agency" required by their contracts, and for overseas USPSCs,

without customary arrangements and time to repatriate.

33.    Many USPSCs remain locked out of their U.S. Government email accounts, do

not know the status of their employment, and do not know whether they will be

reimbursed for significant reimbursable expenses, including reimbursable expenses

incurred before January 20, 2025.

34.    Defendants advertise that the EO, the ALDAC, and the stop-work orders are

subject to waivers—to allow the resumption of certain forms of "life-saving

humanitarian assistance." That is also pretext. As reported by USAID's Inspector

General, who was terminated twenty-fours after issuing his report with these

conclusions, USAID's capacity to implement waivers has been crippled by staffing

reductions, confusion about the scope of humanitarian assistance waivers, and bans on

communications between USAID staff and contractors about the waivers. According,

again, to the OIG, these issues have not been obviated by court orders pausing

additional staff reductions. See also https://www.devex.com/news/the-mess-inside-

rubio-s-lifesaving-waivers-109398 ("The mess inside [Secretary] Rubio's 'lifesaving'

waivers") (last visited Feb. 17, 2025).

**E.    COURT ORDERS**

35.    Currently, there is no restraining order or injunction in place that expressly

protects USPSCs. Judge Nichols entered a temporary restraining order to protect

USAID "direct-hire" employees. ECF 15 in Case. No. 1:25-cv-352-CJN. And in two cases

filed by non-governmental organizations, Judge Ali entered a temporary restraining

order against (1) the suspension or failure to disburse foreign-assistance funds, and (2)

the issuance or enforcement of stop-work orders in connection with contracts, grants or

other financial assistance awards. ECF 21 in Case No. 1:25-cv-402-AHA; ECF 17 in Case

No. 1:25-cv-400-AHA.

36.    On February 15, 2025, after a number of court orders enjoining enforcement

of some of his Executive Orders, President Trump posted, on Truth Social and also X,

"He who saves his Country does not violate any Law":



(Truth Social/@realDonaldTrump)

Soon after, the official White House X account re-posted the same self-declaration that

the President is above the law under a portrait of President Trump:

12



37.    The President's declaration of his authority to act above the law is a

translation of the French phrase from "Celui qui sauve sa patrie ne viole aucune loi,"

reputedly spoken by Napoleon Bonaparte, who seized power in France through a coup

in 1799 and then crowned himself Emperor.

## V.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
Separation of Powers
(Against Defendant Trump)

38.    The President is not a CEO. And Congress is not the President's CFO. That is

not how Articles I and II work.

39.    Presidential power is conferred, and limited, by Article II of the Constitution

and by federal statutes. Congress, not the President, directs how federal funds must be

spent, through appropriations that carry the force of law. The President, obligated to

"take care" to execute the law, has no authority to ignore or amend the law, including

appropriations statutes.

40.    Congress controls the purse. U.S. Const. art. I. And the President cannot

abolish or ignore Congress's control of the purse, as if Congress were merely a

paymaster or bursar. With the Foreign Aid EO, the President has unconstitutionally

usurped Legislative Authority and the power of the purse that the Constitution gives

exclusively to Congress. The EO exceeds the scope of the Executive Authority under the

Constitution. It is an ultra vires act.

41.    The President also has no authority to eliminate agencies created by an act of

Congress, as USAID was.

42.    Because of the President's actions described above, the PSC Association and

its members are suffering irreparable injury, and they have no adequate remedy at law.

**SECOND CAUSE OF ACTION**
Take Care Clause
(Against Defendant Trump)

43.    Under the Constitution, the President is obligated to "take Care that the Laws

be faithfully executed." U.S. Const. art. II § 3.

44.    Through his actions described above, the President is flouting rather than

faithfully executing the law and is inflicting irreparable injury on the PSC Association's

members, who have no adequate remedy at law.

## THIRD CAUSE OF ACTION
Violation of the APA
(Actions that are Arbitrary, Capricious, and an Abuse of Discretion)
(Against all Defendants except President Trump)

45.    Under the Administrative Procedure Act (APA), this Court may hold unlawful and set aside final agency action for being "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A).

46.    Defendants are "agencies" under the APA, and their dismantling of federal foreign assistance, as alleged above, is "final" agency action. The Foreign Aid EO, the ALDAC, the stop-work orders, and Defendants' steps carrying them out have caused immediately devastating and potentially irreversible effects, with consequences that may not be abated by future agency action. Pragmatically, if the lawfulness of the Defendants' actions is not decided now, a later favorable decision will be too late.

47.    By dismantling and trying to eliminate USAID and by refusing to disburse Congressionally appropriated foreign aid funds, Defendants have acted and are acting arbitrarily and capriciously and abusing their discretion: their stated justifications about aligning foreign aid with policy priorities do not match and are wildly disproportionate to their actions (shuttering an entire agency). And Defendants have offered no evidence of having given reasoned consideration to alternatives.

## FOURTH CAUSE OF ACTION
Violation of the APA
(Actions Not in Accordance with Law)
(Against all Defendants except President Trump)

48.    Under the Administrative Procedure Act (APA), this Court may hold

unlawful and set aside final agency action for being "not in accordance with law."

5 U.S.C. § 706(2)(A).

49.    Defendants' actions, as described above, are not in accordance with law: they

violate separation of powers, the take care clause, the APA, Congressional

appropriation statutes (FY 2024 SFOPS; § 7063 of Division F of P.L. 1818-47) and the

Impoundment Control Act of 1974 (2 U.S.C. § 681), and the Anti-Deficiency Act (31

U.S.C. § 1512(c)(1)).

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks the Court to:

**A.** Issue a temporary restraining order, ordering Defendants to immediately:

   a.  Return USPSCs to the terms and conditions of employment they enjoyed
       on January 19, 2025;

   b.  Immediately authorize USPSCs to resume and continue the work they
       were performing before January 20, 2025;

   c.  Recall all mandatory evacuation orders for USPSCs issued since January
       19, 2025, unless required for the safety of USPSCs;

   d.  Refrain from terminating USPSC contracts in effect on January 19, 2025 or
       allowing them to lapse;

      e.  Restore USPSCs' access to U.S. Government facilities, security, email, and computer and communications systems and networks;

      f.  Release money to pay, and pay, USPSCs, including for back wages owed and for covered expenses they have already incurred but not been reimbursed for, consistent with the terms of their contracts and any relevant statutes and regulations; and

      g.  Cease disclosing ("doxing") USPSCs' personally identifying information and remove that information from the DOGE website;

**B.**  Pending a ruling on permanent injunctive relief, restrain Defendants from issuing, implementing, enforcing, or otherwise giving effect to terminations, suspensions, or stop-work orders in connection with any USPSC contracts that were in effect as of January 19, 2025, or in connection with any contracts, grants, cooperative agreements, loans, or federal foreign assistance awards that were in effect as of January 19, 2025;

**C.**  Declare unlawful Defendants' suspension of foreign assistance funding and dismantling of USAID—as ultra vires, unconstitutional, and violations of the APA and the Impoundment Control and Anti-Deficiency Acts;

**D.**  Issue a permanent injunction enjoining Defendants and all of their officers, employees, and agents from taking any steps, without Congressional approval, to implement, enforce, or otherwise give effect to the dismantling of USAID, to subsume USAID within the State Department, to shift USAID functions, bureaus, or offices to the State Department, or to freeze funds appropriated by Congress for foreign assistance.

**E.**  Order Defendants to file status reports at regular intervals confirming their compliance with the Court's order(s) and judgment(s) in this case.

**F.**  Award Plaintiffs their costs and reasonable attorneys' fees; and

**G.**  Grant any additional relief the Court deems just and proper.

Dated: February 18, 2025                    Respectfully submitted,


   /s/ Marni Willenson

| | | |
|---|---|---|
| Carolyn E. Shapiro* | Marni Willenson | Joshua Karsh* |
| Schnapper-Casteras PLLC | D.C. USDC Bar No. IL0011 | Mehri & Skalet PLLC |
| 200 E. Randolph St., Ste 5100 | Illinois Bar No. 6238365 | 1237 Judson Ave. |
| Chicago, IL 60601 | Willenson Law, LLC | Evanston, IL 60202 |
| cshapiro@schnappercasteras.com | 3420  W. Armitage Ave., | jkarsh@findjustice.com |
| 312-520-7533 | Ste 200 | 773-505-7533 |
| | Chicago, IL 60647 | |
| | marni@willensonlaw.com | |
| *pro hac vice forthcoming, | 312-546-4910 | *pro hac vice |
| *Member of the Illinois bar with a* | | forthcoming, |
| *D.C. practice limited to federal* | | *Member of the Illinois* |
| *litigation. Not a member of the* | | *bar with a D.C. practice* |
| *District of Columbia bar.* | | *limited to federal* |
| | | *litigation. Not a member* |
| | | *of the District of* |
| | | *Columbia bar.* |