# EXHIBIT L

Case No. 1:25-cv-469

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| PERSONAL SERVICES CONTRACTOR ASSOCIATION, | ) ) ) ) | |
| *Plaintiff,* | ) ) | Case No. 1:25-cv-469 |
| v. | ) ) ) | |
| DONALD TRUMP, et al., | ) ) ) | |
| *Defendants.* | ) ) | |

**DECLARATION OF Y. DOE**

I, Y. Doe, declare as follows:

1. I am over 18 years old and competent to give this declaration, the contents of which are based on my personal knowledge, information and belief.

2. I am a USAID Personal Services Contractor (PSC) and a member of the PSC Association. Currently, I serve as a Program Officer, assigned to USAID/Democratic Republic of the Congo in Kinshasa.

3. My PSC contract has a one-year base term (February 2021 - February 2022), followed by four option years, which would extend my current assignment through February 2026.

4. On February 14, 2025, I was due to sign and enter into option year four of my contract.

5. In order to ensure that the retention of PSC personnel is merit-based, annual performance evaluations are conducted prior to PSC contract extensions. My performance evaluation was conducted and finalized in December 2024. I received an "exceptional" rating and, further, I was assured that the review was submitted in accordance with personnel procedures in the first week of January 2025.

6. During the course of my employment, it has been known for USAID option-year paperwork to be issued on or after the anniversary date with retroactive effect. Given this precedent, I continued to fulfill my function in accordance with the terms of my employment, including travelling for temporary duty (TDY).

7. While PSC contracts state that contract extensions are by mutual agreement and at the discretion of the Supervising Officer, in practice, when PSCs have strong performance reviews and wish to remain in their posts, and especially given the level of needs and volume of work, USAID routinely extends their contracts.

8. On January 20, 2025, the President of the United States issued an Executive Order (the Executive Order on Review of Foreign Assistance Programs) imposing a 90-day "pause" on all U.S. foreign assistance. Given the ambiguities and inconsistencies in the language used, it was unclear how the executive order would be applied to PSC employees, particularly in relation to exercising the option year. However, I was given assurances by my supervisors who were in touch with agency leadership that my contract modification was proceeding as expected.

9. On January 24, 2025, Secretary of State Marco Rubio issued a communique to all diplomatic and consular missions ("ALDAC"), purporting to provide "waivers" to stop-work orders issued under the Executive Order:

(U) The Secretary of State has approved waivers of the pause under the Executive Order and this ALDAC, subject to further review, with respect to:

[...]

(b) emergency food assistance and administrative expenses, including salaries, necessary to administer such assistance;

(c) on a temporary basis, salaries and related administrative expenses, including travel, for U.S. direct hire employees, personal services contractors, and locally employed staff.

10. After receiving notice of these purported waivers, I immediately reached out to seek clarity on my contract and received written assurance, on January 27, 2025, that the Office for Talent Acquisition Management and Outreach (TAMO) was "proceeding with business as usual for current PSC contracts. However, if any guidance comes out from the Agency Front Office and General Counsel, we will keep you updated."

11. Since receiving that assurance on January 27, 2025, I have received no definitive guidance about my employment status or contract extension. Though I have received verbal and written assurances from supervisors that PSC actions, such as my option year, were being processed.

12. Unfortunately, despite the assurances received, I did not receive the paperwork required to exercise my option year in a timely fashion. Nor did I receive notice of termination. In fact, I have received no communication at all on the status of my position or the future of my role. My contract has not been formally terminated, but it has not been extended either. I am in limbo.

13. Uncertainty over future employment and job security would be enough to cause anyone anxiety. However, as an PSC based overseas, the lack of clarity and abandonment by my employer has much more broad-reaching implications on my life, my household, my finances and my personal well-being.

14. In service of the US Government, four years ago, I moved my entire household to Kinshasa, DRC, including my spouse and two pets. The leased housing provided by the U.S. Government has become home for us.

15. Prior to January 20, 2025 I departed my post in Kinshasa, and on January 20, 2025, arrived as temporary support for another USAID Regional Officer for a period of three months.

16. I readied myself to take on my new portfolio. However, the Executive Order issued on January 20, 2025 to pause all U.S. foreign assistance meant that I was never able to fulfill my duties and speak to implementing partners.

17. Aside from concern for our own personal circumstances, there was a palpable fear that, in the event of a natural disaster in the region, the response would be crippled due to the stop work orders (SoWs).

18. In addition to the stress my new team and I were facing, over the weekend of January 25–26, 2025, M23 rebels in eastern DRC took control of the city of Goma. Due to the aforementioned "pause" on all U.S. foreign assistance, our implementing partners were sending footage of the horrors unfolding and reaching out for guidance to their USAID counterparts—to which we were unable to respond.

19. Given the time zone difference, I was receiving these updates from the DRC and monitoring the situation as closely as I was able throughout the night, in case I would be

4

able to provide some form of remote support to my "home team" in DRC. But because of the SoW, there was nothing I could do. I felt impotent.

20. On January 28, 2025, the majority of American staff and their families at the mission in Kinshasa were placed on ordered departure (OD) due to escalating violence in the capital and targeted attacks on US infrastructure, including private homes.

21. I was in communication with friends and colleagues in Kinshasa during this stressful time. They were given the directive to choose between their personal belongings and their pets, as only one item per person was allowed on the boat.

22. Neighbors secured my own home, leaving our pets behind while I frantically sought to arrange care for them over the phone.

23. On Sunday, February 2, the majority of colleagues globally began to be locked out of their systems. I, somehow, retained access and became the conduit for relaying the constantly changing stream of information to the team. Were it not for my continued access and those of our locally employed staff, my colleagues and I would have been unable to coordinate or remain informed of new developments.

24. On February 4, employees received an email titled "The Path Forward" which detailed that as of Friday, February 7, 2025, USAID direct hire personnel would be placed on administrative leave globally, with a few unclear exceptions, and that USAID personnel based overseas would be recalled to the United States within 30 days, subject to consideration of "case-by-case" exceptions. The email was signed "Thank you for your service."

25. Regarding the PSCs, the "Path Forward" email stated that the Agency was "currently preparing a plan, in accordance with applicable requirements and law" that

5

would "provide for the termination of PSC and ISC contracts that are not determined to be essential." However, the email did not announce the termination of any contracts at that time, did not detail how determinations of "essential" were to be made, and did not explain how those terminations would be carried out in a safe and dignified manner. It stated only that the Agency was "preparing a plan" to terminate PSC contracts.

26. The "Path Forward" email created a sense of panic for all of us based overseas and also my DRC colleagues now on evacuated status in the US.

27. Following receipt of that email, the consensus was that I should curtail my TDY and join my colleagues on ordered departure/evacuation status in Washington DC.

28. During my TDY, I had been incurring significant costs, which I am not sure will be honored.

29. Trump administration officials have cut off my Agency's capacity to pay me what I am owed. I have undertaken significant costs and liabilities in good faith reliance on the government's obligations to my family and me for my service. These obligations, including Cost of Living Allowance (COLA), Special Evacuation Allowance (SEA), Meals and Incidental Expenses (M&IE), and hotel costs have not yet been paid or reimbursed, and it is unclear at the time of writing whether they will ever be paid. Despite my need to make long-term financial and other commitments regarding my life and lifestyle, the Agency that employs me makes unexplained short-term threats to my employment with no indication of any plan for what I can expect in the coming days, let alone in the coming months.

30. I am currently owed upwards of $18,000 in unpaid vouchers for travel health insurance and other entitlements. I am continuing to accrue costs, and I am unsure for how long I can shoulder this financial burden.

31. Furthermore, being in the US means I will lose entitlements that I have relied upon, such as housing, utilities, cost of living allowance (COLA) and post-differential.

32. As part of the evacuation instructions and the Executive Orders mandating a return to in-person work, staff were informed they must relocate to the Washington, DC area so they could go to the office. However, since February 3, the USAID buildings have been closed to staff. As of the time of this writing, they have never reopened. Despite being forced to take on expensive DC-area leases and costs, USAID staff have never been allowed to go to the office. Again, despite significant efforts by USAID administrative (non-political) staff, thus far no evacuation support payments have yet been made to anyone from USAID/DRC.

33. I do not have property in the US and, unfortunately due to bereavement, have limited family ties in the US. In an effort to keep my costs down, I am staying with friends in spare bedrooms and on sofas, moving every few days.

34. My Home of Record in my contract is in the not in the US, but while I remain in limbo with my contract, I am scared to return home (where my costs would be significantly lower), because it could be considered a breach of the order requiring us to work in the shuttered offices in Washington, D.C. (the return-to-work order).

35. Because I was stationed overseas, I also do not have a health insurance plan that covers me for medical treatment in the US. The uncertainty with my contract and position, and with my employment overall, means that I am unable to obtain health insurance and live in constant fear of illness or injury.

36. My PSC contract states, "For travel to and from post of assignment, the contractor shall be reimbursed for travel costs and travel allowances from place of residence

in the United States (or other location provided that the cost of such travel does not exceed the cost of the travel from the contractor's residence in the United States) to the post of duty in the Cooperating Country and return to place of residence in the United States (or other location provided that the cost of such travel does not exceed the cost of travel from the post of duty in the Cooperating Country to the contractor's residence) upon completion of services by the individual." My belongings and pets remain in Kinshasa and I do not know to what extent the US Government will honor the terms of my contract, particularly since they allowed it to lapse while I am on an overseas assignment.

37. Contractually, I should be reimbursed for OD until February 27, 2025. However, no one knows what will happen after that date, and no one knows the implications of the fact that my February 14, 2025 contract anniversary date has lapsed.

38. Given the assurances I received, I had no reason to prepare for the termination of my contract.

39. Since January 20 2025, I have been living in a perpetual state of anxiety and turmoil. To-date, I remain available to carry out the functions of my role as stated in the terms of my PSC contract until directed otherwise, but have received no guidance, support or definitive response. In remaining committed to this role, I do so at personal and financial risk.

40. At USAID, we are dedicated professionals committed to our mission of providing critical assistance to those in need. Despite rapidly evolving directives, we worked diligently in an attempt to ensure that aid reaches the most vulnerable communities. Throughout this process, we have faced malicious criticism and vitriol from those in the highest positions of power, both in internal communications and in the public sphere. The

inflammatory rhetoric directed at us has not only misrepresented our efforts but has also been used to justify treatment that fails to uphold the basic dignity and respect that all individuals deserve. In my case, and in those of many of my PSC colleagues, our situation is particularly precarious. The lack of humanity with which we are being treated threatens our livelihoods and, in some cases, our very lives. We remain steadfast in our pursuit of fair and just treatment for all USAID employees and the populations we support around the globe.

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

    Executed on February 18, 2025.

                                              /s/ Y. Doe