# EXHIBIT 6

**25-cv-469-CJN**

**Motion for Leave to File**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| PERSONAL SERVICES CONTRACTOR ASSOCIATION, | ) ) ) ) |  |
| *Plaintiff*, | ) ) | Case No. 1:25-cv-469-CJN |
| v. | ) ) |  |
| DONALD TRUMP, et al., | ) ) |  |
| *Defendants*. | ) ) |  |

**DECLARATION OF JAY DOE**

I, Jay Doe, declare the following under penalties of perjury:

1. I am over 18 years of age and competent to give this declaration. This declaration is based on my personal knowledge, information, and belief.

2. I am a U.S. Personal Service Contractor ("USPSC") posted with the United States Agency for International Development ("USAID") overseas, on another continent. I am a member of the PSC Association.

3. I have been employed by USAID for over 10 years. I have served as a USPSC with USAID for 3.5 years and have been stationed overseas as part of my official duties. These duties include serving as a Contracting Officer's Representative (COR) managing a $30 million contract operating in five (5) countries. I also serve as a technical expert for USAID.

**Confusion and Chaos**

4. On or about February 4th, 2025, a notice was posted on the USAID.gov website informing all overseas staff that they will be returned to the United States within 30 days, with exceptions for, among other things, those who have personal or familial medical needs that would

require them to stay in their assigned country.

5. With only this as guidance, on or about February 5, 2025, leadership at my Mission requested that all staff requiring an extension for departure past 30 days provide justification for an extension based on disruption of school for children, or for personal or familial medical needs.

6. On February 6, 2025 I provided the requested justification for an extension due to my wife's urgent medical need for surgery, the details of which are provided below. To this date, USAID has provided no additional information regarding the process for extensions, my individual request, or if this extension even applies to USPSCs posted overseas.

7. On February 10, 2025, Peter Marocco, the Trump appointee leading day-to-day operations at USAID, submitted a declaration to this court affirming that overseas employees would have a choice to remain at their assigned posts and continue receiving their existing benefits even if placed on paid administrative leave. *See* Declaration of Peter Marocco, *American Federation of Government Employees, et al. v. Trump*, et al., 1:25-cv-00352-CJN (ECF #20, Exhibit D).

8. In a subsequent sworn declaration on February 14, 2025, Peter Marocco contradicted this initial position, asserting that any employee directed to leave their post who failed to do so within 30 days would no longer be considered officially stationed overseas and could lose their benefits. *See* Declaration of Peter Marocco, *id.* at ECF # 35, ¶ 15. He also stated that the information in that declaration applied only to direct hires. *Id.,* ¶ 19.

9. On or about February 20, 2025, during a Mission leadership update with USPSCs, my USAID colleagues and I were informed by Mission leadership that a directive to terminate USPSCs at our Mission was sent from USAID headquarters with a template containing generic "termination for convenience" language.

2

10. That same day, we were informed that this directive was later recalled.

11. This contradictory guidance and attempted termination has created substantial confusion and uncertainty for me, my family, and my fellow USAID colleagues posted overseas.

12. The potential loss of benefits and access to necessary services, such as emergency medical evacuations, is particularly distressing.

13. Creating more uncertainty, pursuant to my contract, USPSC terminations for convenience provide a minimum of 15 days' notice, meaning that any impending termination for convenience might provide only 15 days' notice. A timeline for these terminations has not been provided. Given previous statements and filings regarding the desire to return the majority of USAID overseas personnel to the United States, and my loss of USAID email and systems access, I am under the impression that this termination notice could come any day.

14. An unplanned termination with only 15 days' notice places extreme difficulties on me and my family. In addition to a loss of employment, termination for overseas USPSCs also includes a loss of government furnished housing and loss of residency status in the country where I am posted, requiring my wife and I to leave within 15 days even if we have not gotten all of our affairs in order and completed theU.S. Government's mandated checkout list, and most importantly, regardless of previously scheduled personal or family medical needs.

15. The lack of clarity regarding the supposed "extension" process for USPSC employees unable to return to the U.S. after potentially only 15 days of termination and the unknown timeline of the mandated repatriation process further exacerbates the hardship imposed upon USAID overseas personnel.

**My Wife's Up-Coming Medically-Necessary Surgery**

16. My wife has a medically-necessary surgery scheduled for March 15, 2025 in the

country I am posted in, which cannot be postponed without severe health and financial consequences. She suffers from Obstructive Sleep Apnea (OSA) and craniofacial abnormalities that significantly impact her breathing and overall health. Any delay in this procedure will require additional corrective work and indefinitely set back her treatment. This procedure is dependent on other previous and on-going medical treatment begun over six months ago, which have only now progressed to the point where she is eligible for this surgery. Furthermore, she is currently employed by a USAID implementing partner that has received termination notices for a number of USAID funded activities. Due to these sudden award terminations by USAID she has been placed on furlough and her employment is expected to be terminated on March 31, 2025 at which time she will lose her health insurance coverage. If this procedure is not completed before the loss of medical coverage on March 31, 2025 we will incur a significant out of pocket expense for this medically-necessary surgery.

17. Specifically, my wife requires a complex maxillofacial surgery that includes the following procedures: reposition her upper jaw (maxilla) to correct bite misalignment and airway obstruction, reducing the severity of her OSA and restoration and enhancement of the structure of her cheekbones (zygoma) to improve airway patency. Bone segments will be cut and repositioned in the jaw and midface, secured with plates or screws to ensure long-term stability. Her chin will be repositioned to increase airway space and improve breathing function, reducing the risk of airway collapse during sleep. She will also have bone regenerative repair which will restore lost bone volume and ensure structural stability after repositioning.

18. This is a highly complex and invasive surgical intervention that requires careful postoperative recovery. Due to the extent of bone repositioning and structural modifications, a strict recovery period of six weeks is mandatory with no travel permitted. Failure to comply with

this recovery plan could result in severe medical complications, including airway collapse, infection, and improper bone healing.

19. Given the uncertainty around the timeline of the termination of my contract, the possibility that only 15 days' notice will be provided, and the lack of clarity and applicability of a "waiver" for medical needs for USPSCs, termination of my USPSC contract will force us to either depart post prior to this medically necessary procedure or force us to leave the country during the critical recovery period after my wife's surgery, placing her health in danger.

**Mandated Departure Procedures**

20. Additionally, a potential 15 days' notice of termination and mandated departure from the country does not allow enough time to complete mandated departure documents and to complete other necessary actions prior to departing. These actions include:

21. Obtaining an official Diplomatic Exit Visa from the host country government: In order to lawfully exit the country where I am posted at the end of a diplomatic assignment requires the issuing of an official Diplomatic Exit Visa. Failure to leave using this official exit visa will result in my wife and I being prohibited from re-entering the country for any reason

22. Completing mandated housing compliance checks and pack-out procedures: Numerous processes are mandated when it comes to vacating government provided housing at post, including an inspection of housing and government owned property for damage, adjudicating and paying for any damage that the occupant is determined to be responsible for, and completing the packing for shipment of personal property in a manner that ensures the security of personal property.

23. Finding safe and affordable housing in the United States: I, along with many if not most USAID personnel serving overseas, do not have readily available housing to return to with

15 days' notice. As a result we will be forced to procure accommodation in the US practically sight unseen. Finding safe and available accommodation, completing necessary rental agreement processes (i.e. background checks, reference checks, etc.) and determining an available move-in date is likely to take much longer than 15 days. Failure to find housing before returning to the US will require me and my family to stay at a hotel for an undetermined period of time, placing a significant financial burden on us. Additionally, completing this process while also completing all necessary departure processes in 15 days will be extremely difficult, if not impossible.

24. Selling our personally operated vehicle (POV): Given the nature of the environment of the country where I am posted, having a POV is critical to my ability to travel to and from work and to live safely. Upon departure we will need to sell our POV as there will be no other option of what to do with the vehicle. Selling a car takes time as there are numerous bureaucratic processes associated with selling a diplomatically registered vehicle. Additionally, selling a car at such short notice will likely require the need to sell at a potentially significant loss as the sale will be under distress.

25. Exportation of our family dog to the United States: Numerous procedures required for importing a dog into the United States from my country that can take 5 months or longer to complete. These procedures include rabies vaccination and other documentation required by the CDC as well as finding available flights. 15 days' notice does not provide enough time to complete these processes and will require us to board our dog at significant and unknown expense while these processes are completed. A waiver for these procedures has been issued by the CDC, effective until April 1, 2025, but it is unclear if USPSCs are eligible or if the waiver will be extended past April 1, 2025 given that the timeline for USPSC terminations has not been set.

26. As a result of the abrupt dismantling of USAID, both my wife and I may be left

6

without jobs. This decision has created an impossible situation where we may be required to vacate our overseas post within 15 days while simultaneously finding employment, securing housing in the U.S., selling our belongings, including a car, and arranging for the shipment of our dog.

**Inability to Perform Continuing Duties**

27.     Since on or about February 3, 2025, due to my lack of access to the USAID email and other systems, I have been significantly impeded in my ability to perform my duties as COR, including directly communicating with implementing partners and performing my oversight duties to review the appropriateness of requests for payment for work completed prior to January 19th, 2025. Additionally, on February 13, 2025, a waiver to the pause in foreign assistance was requested for the contract that I manage as per a process provided by USAID headquarters. If granted, this waiver would lift the stop work order that is currently in place for this contract and allow a limited number of activities to continue. If a waiver is granted this would allow activities under the mechanism I manage to restart and would require my oversight duties as COR. To date, USAID has provided no update as to the status of this request. If the activity under the contract were to receive a waiver and resume, I would be unable to perform my duties as COR given my lack of access to USAID email and systems.

**Conclusion**

28.     The confusing and sometimes contradictory statements from USAID leadership have left me and my family uncertain about our status, benefits, and future employment. The rapid shift in policy will result in financial instability, loss of health insurance and other critical benefits, and personal hardship for my family and me, as well as for other USAID employees posted overseas. Further, the complexity of my wife's surgery and the mandatory recovery period make it physically impossible to comply with a 15-day evacuation deadline.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 26, 2025.

                                                    /s/ *Jay Doe*
                                                    Jay Doe