# EXHIBIT 85

## 25-cv-469-CJN

# OFFICE OF INSPECTOR GENERAL

## U.S. Agency for International Development

# Contractor Use for Disaster and Stabilization Responses: USAID Is Constrained by Funding Structure but Better Data Collection Could Improve Workforce Planning

Report E-000-22-002-M
September 29, 2022



Inspections, Evaluations, and Special Projects Division



# OFFICE OF INSPECTOR GENERAL
## U.S. Agency for International Development

**DATE:**        September 29, 2022

**TO:**          Management and Resources, Deputy Administrator, Paloma Adams-Allen
                 Policy and Programming, Deputy Administrator, Isobel Coleman
                 Office of the Administrator, Chief Diversity Officer, Neneh Diallo

**FROM:**        Office of Audit, Assistant Inspector General for Audit, Toayoa Aldridge

**SUBJECT:**     Contractor Use for Disaster and Stabilization Responses: USAID Is Constrained
                 by Funding Structure but Better Data Collection Could Improve Workforce
                 Planning

This memorandum transmits the final report on our evaluation of the use of contractors within
USAID's Bureau for Humanitarian Assistance (BHA) and Office of Transition Initiatives (OTI).
Our objectives were to (1) assess advantages associated with BHA and OTI's use of PSCs and
ISCs, (2) assess challenges associated with BHA and OTI's use of PSCs and ISCs, and (3) report
on the alternatives that USAID has explored to BHA and OTI's use of PSCs and ISCs.

The report contains seven recommendations to improve USAID's management of its
contractor workforce. After reviewing information you provided in response to the draft
report, we consider one recommendation closed (recommendation 6), four resolved but open
pending completion of planned activities (recommendations 1, 3, 4, 5), and two open and
unresolved (recommendations 2 and 7).

For recommendations 1, 3, 4, and 5, please provide evidence of final action to the Audit
Performance and Compliance Division. Please work with us to resolve recommendations 2 and
7.

We appreciate the assistance you and your staff provided to us during this engagement.

# Contents

Introduction ...................................................................................................................................1

Background ....................................................................................................................................2

   Contractors at BHA and OTI ..............................................................................................2

   USAID Funding Structure......................................................................................................3

Flexible Funding Allows BHA and OTI to Hire Contractors and Meet the Need for Short-term Surge Staff .....................................................................................................................................4

   BHA and OTI Have the Authority to Fund Contractors With Program Funds When Operating Expenses Are Limited for Direct Hires .............................................................4

   BHA and OTI Can Identify Staffing Needs and Deploy Surge Staffing According to Crisis Conditions .................................................................................................................................6

Challenges Include Hiring and Retaining Contractors for Long-term Mission Needs, and Lack of Data for Workforce Planning .......................................................................................................7

   BHA and OTI Reliance on Contractors Does Not Support the Changing Nature of Crises and Places a Burden on Direct Hires .................................................................................7

   USAID Faces Challenges Recruiting and Retaining PSCs ...................................................9

   USAID Does Not Control Elements of Safety or Privacy for Contractor Staff, Creating Confusion and Morale Issues............................................................................................. 11

   Use of Contractors Forces the Agency to Create and Fund Parallel Hiring and Management Structures............................................................................................................................... 13

   USAID Lacks Data and Metrics on Contractors to Capture Costs, Inform Workforce Planning, and Promote Diversity ..................................................................................... 14

Lack of Stakeholders' Unity and Funding Authority Have Hindered Implementation of Staffing Alternatives .................................................................................................................................. 15

   USAID Has Explored Alternative Staffing Models ......................................................... 16

   Competing Stakeholder Interests Have Limited Progress on Establishing an Alternative Staffing Model....................................................................................................................... 19

Conclusion ................................................................................................................................. 21

Recommendations .................................................................................................................... 22

OIG Response to Agency Comments ................................................................................... 23

Appendix A. Scope and Methodology................................................................................... 24

Appendix B. Organizational Chart......................................................................................... 25

Appendix C. Agency Comments............................................................................................. 27

Appendix D. Major Contributors to This Report.............................................................. 33

# Introduction

The workforces of the Bureau for Humanitarian Assistance (BHA) and the Office of Transition Initiatives (OTI) have supported their missions through a combined use of direct hire staff and contractors, increasingly relying on the latter over time. BHA and OTI are primarily comprised of two types of contractors: personal services contractors (PSCs) and institutional support contractors (ISCs). While this workforce composition provides some advantages, reliance on contractors also presents a number of challenges.

USAID has recognized that emergency responses are becoming increasingly prolonged. For example, USAID's response to Liberia's Ebola crisis in 2014 lasted less than two years, whereas the crises in Syria, Iraq, and South Sudan have been ongoing since 2013. Such protracted crises require staff on the ground not just for months but years. However, contracting mechanisms are generally short-term in nature and provide staff fewer protections and benefits than those for direct hire employees—which makes the positions harder to fill for the duration of their five-year terms. To address staffing needs more effectively, USAID has identified alternative hiring mechanisms to contractors, but has yet to implement solutions due to budget structure constraints and other factors.

Data on how contractors are funded, hired, and managed are key to understanding the workforce challenges and addressing them. USAID has two separate funding streams, each imposing constraints around how it can be used. This funding dynamic has implications for how the Agency can staff its missions and dictates the framework within which BHA and OTI operate, and their efforts to implement alternative approaches have not yet received congressional approval. Nonetheless, congressional stakeholders verbally expressed to OIG staff that there is significant lawmaker and staff interest in better understanding USAID's use of contractors and its impact on the Agency's operations.

Prior OIG work first identified staffing concerns in BHA and OTI through Overseas Contingency Operations quarterly reporting prior to January 2020 that noted changes among BHA and OTI points of contact each quarter, highlighting a retention concern in these offices. We conducted this evaluation to:

1. Assess advantages associated with BHA and OTI's use of PSCs and ISCs,

2. Assess challenges associated with BHA and OTI's use of PSCs and ISCs, and

3. Report on the alternatives that USAID has explored to BHA and OTI's use of PSCs and ISCs.

We focused on the use of PSCs[1] and ISCs in BHA and OTI, the latter of which sits within the Bureau for Conflict Prevention and Stabilization (CPS). See Appendix B for an organizational chart of USAID, with offices in scope of this evaluation highlighted in orange. We conducted our work from January 2021 to May 2022 in accordance with the Quality Standards for

---

[1] For this study, PSCs are defined as U.S. nationals hired under contract for personal services. This does not include Foreign Service Nationals or Third Country Nationals hired as PSCs by overseas missions under Section 636(a)(3) of the Foreign Assistance Act.

Inspection and Evaluation from the Council of Inspectors General on Integrity and Efficiency. To answer our objectives, we reviewed documentary evidence, interviewed 19 USAID staff, and analyzed data from ForeignAssistance.gov and Agency-provided sources. See Appendix A for a full explanation of our scope and methodology.

# Background

## Contractors at BHA and OTI

The federal government uses a variety of staffing mechanisms, including contracting for personnel. In 2020, there were approximately 5 million government contractors, compared to approximately 2.2 million federal employees and 1.4 million members of the military, according to analysis by the Brookings Institution.[2]

PSCs and ISCs comprised 29 percent of USAID's overall Fiscal Year (FY) 2020 workforce. There were slightly more direct hire Foreign Service (FSO), Foreign Service Limited (FSL) and Civil Service (CS) employees (31 percent), than contractors. The workforce was largely comprised of foreign service nationals (FSN) (39 percent). The remaining 1 percent of USAID's workforce was comprised of Participating Agency Service Agreement staff (PASA) and Fellows. See figure 1 for USAID staffing by hiring type.

**Figure 1: USAID Staffing by Hiring Type**



Source: 2020 Agency Financial Report and HCTM.

Although contractors are less than a third of USAID's staff, they are the majority at BHA and OTI. BHA's objective is to provide "life-saving humanitarian assistance—including food, water, shelter, emergency healthcare, sanitation and hygiene, and critical nutrition services—to the world's most vulnerable and hardest-to-reach people." OTI's objective is to support "U.S.

---

[2] Paul C. Light, "The True Size of Government is Nearing a Record High," The Brookings Institution, October 7, 2020.

foreign policy objectives by helping local partners advance peace and democracy. OTI provides fast, flexible, short-term assistance targeted at key political transition and stabilization needs."

OTI consists of more than 90 percent PSCs and ISCs, and BHA is comprised of more than 70 percent PSCs and ISCs. The remainder of staff in BHA and OTI consists of U.S. direct hires and other mechanisms, such as FSN, Intern, and PASA.[3] Figure 2 illustrates the percentage of PSC and ISC use in BHA and OTI.

## Figure 2: PSC/ISC use in BHA and OTI



Source: OIG analysis of data from USAID.
Note: The "other" category includes CS, FS, Intern, FSL, FSN, Administratively Determined, PASA, Fellow, and Grantee.

## USAID Funding Structure

USAID's budget has funding streams split into two categories: program funds and operating expenses (OE). Program funds are congressionally appropriated funds intended to cover USAID's humanitarian and development assistance. OE are a line-item appropriation intended to cover USAID's administrative, management, and support expenses.[4] USAID direct hire employees and PSC and ISC personnel differ in terms of the hiring process, funding source, scope of work authority, and period of performance.

Direct hires—FSOs, FSLs, and CS staff—are hired through the office of Human Capital and Talent Management (HCTM) and funded with OE. Direct hire employees can potentially perform the full scope of inherently governmental functions in terms of human resources, financial and program management, and procurement throughout their career. PSC and ISC

---

[3] According to the 2020 Agency Financial Report, U.S. direct hires are comprised of CS, FS, and FSL.
[4] The full spectrum of administrative and operating costs is outlined in a 1977 congressional report that stated that USAID's "operating costs include not only the traditional 'administrative expenses,' but also the substantial cost of support and management of programs and projects (such as technical planning and management of specific projects, contracting, procurement of commodities, engineering services, and handling of trainees from abroad)."

personnel are brought into the Agency as a procurement by the Office of Acquisition and Assistance (M/OAA) and funded out of agency appropriations for OE or program funds. The roles and responsibilities of contractor staff are more limited and defined by a shorter term of service as provided in their contract.

# Flexible Funding Allows BHA and OTI to Hire Contractors and Meet the Need for Short-term Surge Staff

Some advantages to using PSCs and ISCs instead of direct hire employees relate to greater flexibility in how the contracting positions are funded and the increased capacity to respond to crisis conditions. BHA and OTI have the authority to use program funds to fund PSCs and ISCs. In addition, BHA and OTI directly control the process for hiring contractors, including technical surge staff for short-term, rapid deployments to meet staffing needs during a crisis.

## BHA and OTI Have the Authority to Fund Contractors With Program Funds When Operating Expenses Are Limited for Direct Hires

BHA and OTI rely on notwithstanding authority, outlined in the Foreign Assistance Act of 1961, as amended, to hire for personal services in the United States, providing them an exception to federal personnel laws, particularly Title 5 of the U.S. Code.[5] BHA and OTI may use either OE or program funds to pay for PSCs, as allowed by USAID policy. This provides BHA and OTI with an additional funding source for personnel as the number of direct hire employees is limited by OE allocations. For instance, prior to the establishment of BHA from the former USAID Offices of U.S. Foreign Disaster Assistance and Food for Peace in 2020, BHA recommended that all management and leadership positions be converted to direct hires; however, according to BHA, there was a lack of sufficient OE to do so. BHA was able to rely on other staffing mechanisms and program funding to hire staff in leadership roles.

According to one senior Agency official, OTI has advocated for more OE-funded direct hire positions to facilitate growing their program. However, this official stated that HCTM cut their OE, and instead, OTI augmented their staff with the PSC mechanism using program funds. Another senior Agency official stated that USAID places direct hires elsewhere because BHA and OTI can hire personnel with program funds. This is supported by our analysis of program funding per OE-funded position over the last nine fiscal years in three groups: USAID overall, BHA, and OTI. We found that BHA and OTI have many fewer OE-funded positions proportional to the amount of program funding they receive compared to the Agency overall.

- USAID as a whole: approximately $3 million to $4 million in program funds per OE-funded position

- OTI: approximately $20 million to $30 million in program funds per OE-funded position

---

[5] Title 5 of the U.S. Code contains those laws which pertain to the Civil Service.

- BHA: more than $100 million in program funds per OE-funded position since 2015

See Figure 3 for the comparison.

## Figure 3: Program Funding Amount Per OE-Funded Position at USAID



Source: OIG analysis of data from ForeignAssistance.gov and Agency Financial Reports of USAID.

A senior Agency official stated that the notwithstanding authority flexibility is why the Agency allocates less OE to OTI and BHA. In an interview with OIG, the head of a USAID bureau indicated that, while program funding amounts are known, there is a lack of visibility on how USAID internally allocates OE and that they have no way of knowing how much OE other offices or bureaus at USAID receive. At least once per year, USAID publicly reports the total and appropriated amount of OE allocated to the Agency in the Agency Financial Report, but allocations at the bureau or office level have not been reported for at least the last three fiscal years. Figure 4 shows that OE represents, on average, a relatively stable proportion of USAID's program funding of 10.6 percent over the last nine fiscal years.

## Figure 4: Total USAID OE in Proportion to Total Program Funds, FY 2012-2020



Source: OIG analysis of data from ForeignAssistance.gov and Agency Financial Reports of USAID.

The use of program funding also allows for PSCs and ISCs to travel more readily to complex and dangerous crisis environments. Specifically, direct-hire staff must also use OE for their travel, while PSCs and ISCs can use program funds. USAID interviewees indicated OE funding for travel was limited, meaning direct hires were not always able to travel.

## BHA and OTI Can Identify Staffing Needs and Deploy Surge Staffing According to Crisis Conditions

BHA and OTI officials said that another advantage to using contractor staff is having greater control to rapidly respond to emergent or changing crises for humanitarian and stabilization purposes. While HCTM manages the hiring and allocation process for direct hire employees, BHA and OTI generally control these processes for contractors. BHA and OTI officials said they see benefit in being able to assess and timely address their staffing needs based on changes in workload requirements.[6]

BHA and OTI also both said that a benefit of the PSC mechanism is the ability to deploy surge staff to adjust staffing levels based on short-term needs. Surge capacity is especially useful when large humanitarian and stabilization responses, such as that for the 2014-2016 West Africa Ebola response, deplete BHA and OTI's staffing roster. Unlike full-time PSCs, surge PSCs are technical experts who serve in an intermittent capacity worldwide up to 250 days per year to supplement BHA and OTI's full-time staff. Surge PSCs can be deployed within hours. Additionally, BHA and OTI's ISC contract as of March 2022 requires the contractor to be able

---

[6] HCTM updated its policy for PSCs in 2021, with the goal to "determine if there is an appropriate FSO available to perform the proposed duties of the … PSC." The policy stipulates that HCTM approve new PSC positions and extensions, with some exceptions.

to provide ad hoc surge capacity. As of January 2022, BHA had 169 surge PSCs compared to 417 full-time PSCs, and OTI has 39 surge PSCs compared to 122 full-time PSCs.

# Challenges Include Hiring and Retaining Contractors for Long-term Mission Needs, and Lack of Data for Workforce Planning

**According to BHA, "the PSC mechanism is a short-term mechanism being used to fix a long-term problem, and a procurement solution being used to fix an HR problem."**

Overall, contracting mechanisms have proven to be important tools to fill short-term needs, enabling BHA and OTI to rapidly respond to emergencies around the world. However, this workforce model uses short-term staffing mechanisms and does not systematically capture workforce data that would allow them to better plan and communicate needs to build a more sustainable workforce for long-term crises.

BHA and OTI officials stated that some challenges to using PSCs and ISCs instead of direct hire employees relate to changes in mission needs, contractor hiring and management, and lack of data and strategy for a sustainable workforce. Specifically, BHA and OTI rely on short-term contracts to address increasingly protracted crises, with the number of direct hire employees falling short of mission needs. In addition, BHA and OTI's procurement of contractors is a lengthy process and retention is problematic due in part to lack of benefits for contractor personnel. Furthermore, USAID does not control elements of safety or privacy for contractor staff, creating confusion and morale issues. Use of contractors has forced the Agency to create and fund parallel hiring and management structures. Finally, unlike with direct hire staff, the hiring and management structures for contractors do not include processes to capture data and metrics to track costs, inform workforce planning, and promote diversity.

## BHA and OTI Reliance on Contractors Does Not Support the Changing Nature of Crises and Places a Burden on Direct Hires

According to Agency leadership, the nature of disasters is shifting from temporary responses to protracted crises—which represents an evolution in BHA and OTI's mandates. The number of complex emergencies the Agency responds to has increased in the past 20 years from 16 to 44. USAID assessed that "flexible, longer-term time appointments are required for USAID's mission responding to global complex crises."

Federal internal control standards state that "management should identify, analyze, and respond to significant changes that could impact internal control."[7] However, the PSC and ISC models, which primarily comprise BHA and OTI's staffing, are intended for short-term services and the

---

[7] U.S. Government Accountability Office, *Standards for Internal Control in the Federal Government*, Principle 9.01, "Identify, Analyze, and Respond to Change," September 2014.

contractors serve in a more limited capacity. Furthermore, there are both limitations on what kinds of duties PSCs and ISCs can perform and a limited number of direct hires who can take on a full spectrum of government functions. As of March 2022, the ISC contract in BHA and OTI had a five-year ordering period and PSCs are offered a one-year contract with the option to renew annually for a maximum of five years. As Table 1 indicates, both are intended for short-term services as reflected in the contract period.

## Table 1: Comparison of Select Types of Contractors with Direct Hires at USAID

|  | PSCs | ISCs | Direct Hires |
|---|---|---|---|
| **Staffing mechanism** | Procurement through M/OAA | Procurement through M/OAA | Hire through Office of Human Capital and Talent Management |
| **Source of Funding** | OE and program funds | OE and program funds | OE |
| **Who they are and what they do** | Provide specialized technical assistance in designing and managing programs, primarily in the field.<br><br>Can also support administrative and management functions, such as financial management, human resources, and procurement.<br><br>The contract is characterized as an employer-employee relationship between the U.S. government and the contractor. | Support administrative, programmatic, and operational functions for which they require space, information, information technology systems, staff, or other federal government assets. | Positions in the Civil Service and Foreign Service appointments. |
| **Inherently Governmental Functions** | Most inherently governmental functions except:<br><br>• Hire or supervise direct hires<br>• Communicate final decisions related to policy, planning, or budgets without direct hire clearance<br>• Obligate funds, unless delegated authority to do so | No inherently governmental functions | All inherently governmental functions |

|  | PSCs | ISCs | Direct Hires |
|---|---|---|---|
| Period of Performance | One-year contract with four option years. Can compete for new contract after five years total. | Determined by ISC contract | Career[8] and noncareer[9] |

Source: OIG analysis of data from USAID.

Even if a PSC's contract is renewed up to the five-year maximum and USAID determines that the Agency requires continuity of the same services at the same position level, the contracting officer must execute a new award following competitive procedures as defined in the Federal Acquisition Regulations (FAR) and USAID Acquisition Regulation.

Furthermore, there are limitations on what kinds of duties PSCs and ISCs can perform. Specifically, ISCs are not authorized to complete inherently governmental functions. Inherently governmental functions are defined in the FAR as "so intimately related to the public interest as to mandate performance by government employees." While PSCs may be delegated or assigned to functions that are delegated or assigned to direct hire employees, USAID regulation restricts PSCs from supervising direct hires, making final decisions on direct hire personnel selections, and requires direct hire clearance on communications that reflect final decisions related to policy, planning, or budgets. According to an official request from USAID to the U.S. Office of Personnel Management (OPM), the limited authority provided to PSCs and ISCs "adds an additional burden to already strapped civil service and foreign service staff." Despite the limited authorities and short-term nature of contractor staff, BHA and OTI use PSCs to fill leadership and long-term roles. Contractors can be hired for leadership roles because their reporting structure is almost completely comprised of contractors except for those at most senior levels, meaning that contractors largely oversee contractors. As of March 2021, staff with full authorities were the vast minority in BHA and OTI: BHA had 76 direct hire employees (FS, CS, FSL) out of a total of 1,334 staff and OTI had 12 out of 227 total staff. In the 2020-2022 Interim Strategic Workforce Plan, USAID specifically noted that the recently reorganized bureaus—including BHA and CPS—struggle with the few direct hire staff shouldering the burden of inherently governmental functions in their office, highlighting this as a "decades long workforce concern."

## USAID Faces Challenges Recruiting and Retaining PSCs

BHA and OTI face challenges recruiting new PSCs and retaining them for the duration of their contracts. Federal internal control standards state that "management should demonstrate a commitment to recruit, develop, and retain competent individuals to achieve the entity's objectives."[10] However, as of early 2022, BHA and OTI stated that their PSC vacancy rates (not including surge) were 50 percent and 33 percent, respectively. A USAID white paper classified

---

[8] Career as defined by the Agency's Automated Directives System (ADS) is "tenure of a permanent employee in the competitive service who has completed three years of substantially continuous creditable Federal service."

[9] Noncareer refers to a non-career appointee as defined by the ADS as "an employee hired for a limited appointment, not to exceed five years, that is not intended to lead to a full career with the Agency."

[10] GAO, *Standards for Internal Control in the Federal Government* (GAO-14-704G), "Control Environment," Principle 4.01, September 2014.

BHA's PSC vacancy rate as "a debilitating problem and a corporate risk."[11] ISC benefits and hiring are controlled by the ISC's contractor-employer and compared to PSCs, ISCs had similar tenures and faster hiring time.

For recruitment, a major contributing factor to BHA and OTI's challenges is the lengthy PSC hiring process. According to the Agency's Automated Directives System (ADS), it should take 145 days from solicitation to award for a personal services contract at USAID. However, BHA stated it takes 383 days from posting a PSC solicitation to executing a PSC contract, more than double the Agency standard. This does not account for the nearly 200 days BHA spends to identify a staffing need and request a new PSC position. This means that nearly 600 days, or over 1.5 years, are spent on every individual PSC contract in BHA. One Agency official pointed out that a benefit of the PSC mechanism is the ability to surge staff during a humanitarian response, but the hiring is slower than for direct hires. According to two OTI staff interviewed, OTI can hire a PSC in 91 to 183 days, though it takes up to a year in some instances, surpassing USAID's procurement standard of 145 days. To reduce the number of days to hire PSCs, both BHA and OTI embed positions across USAID offices that support hiring to speed the process, such as positions to support contracting in M/OAA and security clearance processing in the USAID Office of Security (SEC).

According to OTI data, program managers remain in their five-year contracts an average of 2.5 years, and of all PSCs that left OTI from 2014 to 2019, nearly half left in two years or less. Due to investments in training and the costs associated with hiring PSCs, BHA estimated that the Agency loses between $25,000 and $30,000 every time a PSC leaves USAID.[12] OTI acknowledged that USAID would benefit from higher PSC retention, but USAID has not developed plans to retain PSCs.

USAID does not control PSC exclusion from certain benefits administered by OPM, such as federal health coverage and life insurance. According to BHA, the lack of benefits is the main challenge to recruiting and retaining contractors. In an interview, one BHA employee involved in PSC hiring offered examples of qualified candidates turning down jobs to fill critical vacancies because of the lack of benefits. Further, the BHA employee described the PSC mechanism as "not competitive in the marketplace." According to members of the PSC Association Executive Committee, only certain candidates can afford to go overseas without benefits.[13] Some of the benefits distinctions between direct hires and PSCs include:

- *Health insurance:* According to OTI documents, PSCs are contractually obligated to have international health insurance, but they must purchase it on healthcare marketplaces or through the one available group plan for PSCs. Though they receive partial reimbursement for healthcare insurance premiums up to 72 percent, representatives of the PSC Association explained that PSCs face challenges covering costs. Some PSCs may face challenges covering costs due to the following factors:

---

[11] USAID White Paper "Proposed Employer Matching Contribution for the USPSCs' 401(k) Plan" in final draft form as of April 21, 2021.
[12] USAID White Paper "Proposed Employer Matching Contribution for the USPSCs' 401(k) Plan," 2021.
[13] The PSC Association is a registered Employee Resource Group within USAID's Office of Civil Rights and Diversity. Employee Resource Groups are voluntarily formed and managed by employees to promote the common interests of their members at USAID.

- According to OTI, the reimbursement cap has not changed since 2010 despite the escalating costs of employer-sponsored health plans (98 percent increase from 2008 to 2020) and individual health plans (123 percent increase from 2008 to 2019).

- According to OTI, PSCs' health care contributions are posttax (unlike FS and CS, which are pretax).

- According to OTI, there are no dental, vision, or long-term care group plans for PSCs.

- PSCs are responsible for their health insurance costs both domestically and overseas.

- *Life insurance:* For PSCs, there is a 50 percent government contribution up to $500 annually toward any plan, but there is no group plan or automatic enrollment for life insurance. Moreover, OTI stated that PSCs face challenges obtaining life insurance coverage based on the dangerous locations of their deployments. One Agency staff noted that they traveled to Pakistan as a PSC without being able to qualify for life insurance due to the dangerous nature of the work location. According to a letter from the PSC Association Executive Committee, a survey it conducted found that over 12 percent of PSC respondents had been denied life insurance due to the nature of their work with USAID.

- *Retirement plan matching:* PSCs can make pretax deposits to a retirement plan, but they are the only staffing mechanism at USAID to not receive a matching contribution. When asked "Which one of the following improvements to PSC benefits would you most like to see USAID leadership enact or pursue?" in the 2021 PSC Association survey, the top response was employer matching contribution to retirement plans. A white paper by USAID's Bureau for Management concluded that the bureau was not aware of any statutory authority preventing the Agency from providing a matching employer 401k contribution to PSCs.[14]

- *Leave:* A representative of the PSC Association stated that the inability to retain accrued leave across contracts or request voluntary leave transfers (leave donations) means that many PSCs take leave without pay or forfeit leave.

Although USAID does not control PSC exclusion from certain benefits administered by OPM, such as federal health coverage and life insurance, other benefits are under USAID's purview. On December 1, 2021, Administrator Power announced that USAID would provide paid parental leave of up to 12 weeks and relocation expenses to eligible PSCs, but the Agency did not change its policy on any other benefits, such as retirement plan matching—a benefit that was frequently cited as a motivating factor for PSCs departing BHA.

## USAID Does Not Control Elements of Safety or Privacy for Contractor Staff, Creating Confusion and Morale Issues

Though the nature of USAID's work places many PSCs and ISCs in complex and often dangerous environments, USAID largely does not control the policies and regulations that dictate their travel and safety standards. For example, the Department of State's Foreign Affairs Manual (FAM) states that as non-U.S. government employees who work for commercial contractors or nongovernmental organizations, ISCs are excluded from Chief of Mission (COM) authority. That means the COM is only required to provide ISCs with the same support

---

[14] USAID White Paper "Proposed Employer Matching Contribution for the USPSCs' 401(k) Plan" in final draft form as of April 21, 2021.

as any private U.S. citizen. Additionally, ISCs fall under their embassy's Regional Security Officer's (RSO) guidelines and restrictions, according to staff involved in the management of BHA's ISC contract. Though some ISCs may follow State Department's RSO guidance as a practice, a BHA official explained that missions are often uncertain of how to apply policies for BHA ISC staff, such as recent confusion over COVID-19 related evacuations. ISC travel and safety is further controlled by the contractor's employer (contractor-employer), not USAID. According to USAID's Risk Appetite Statement, "We will require partners to develop their security plans in accordance with our rules and parameters, while recognizing that sometimes the lack of standardization could complicate coordination, or heighten the possibility for weaknesses." The ISC contract as of March 2022 does mention that security plans can be submitted "as appropriate" by the contractor-employer, but the security plans are submitted separately for each task order instead of being standardized. USAID, however, does have some control of security plans in the contract by being able to stipulate plan requirements.

For PSCs, the FAM states that PSCs are covered under COM authority. As such, they are considered "government executive branch employees," meaning the Secretary of State and COM have the responsibility to provide them guidance for evacuating under the Emergency Action Plan Handbook. However, the official Department of State ordered departure cable for Kabul, Afghanistan stated that PSCs were not considered employees for evacuation purposes, and that contractors would be "treated in accordance with their contracts." Additionally, members of the PSC Executive Committee stated there was confusion as to whether PSCs were included in COVID-19 related evacuations and that PSCs described not being allowed back because there was not specific return guidance for PSCs. Though USAID does not control the foundational policies and regulations that dictate PSC travel and safety, it has an employee-employer relationship with PSCs. Federal internal control standards state that management should communicate "quality information down and across reporting lines to enable personnel to perform key roles in achieving objectives, addressing risks, and supporting the internal control system."[15]

USAID also does not control some of the requirements associated with federal procurement. For example, until April 4, 2022, FAR required that PSCs register for a Data Universal Numbering System (DUNS) with Dun & Bradstreet as part of the acquisition process.[16] As a result, personally identifiable information (PII)—including PSC's name, address, and phone number—is published on the company's publicly accessible website. PSCs are also required to register on SAM.gov, which makes their name and address searchable by all federal employees. We were able to access PSC PII on SAM.gov without having to demonstrate an official "need to know," as required by USAID's Privacy Program.

The requirement to register on SAM.gov and Dun & Bradstreet was raised in interviews with OIG and the 2021 PSC Association Survey as a morale concern. Survey respondents emphasized the frustration that they are viewed as a procurement rather than personnel, their

---

[15] GAO, *Standards for Internal Control in the Federal Government*, "Information and Communication," Principle 14.03, September 2014.

[16] The federal government stopped using the DUNS Number to uniquely identify entities on April 4, 2022. Entities doing business with the federal government now use the Unique Entity ID created in SAM.gov.

discomfort with their personal information being posted on websites that are publicly available or available to all federal employees, and how they worry about the associated security risks.

GSA holds the contract with Dun & Bradstreet and operates SAM.gov; therefore, we are not making a recommendation about federal employees having access to contractor PII in SAM.gov, but we will document our concern to General Services Administration (GSA)'s OIG. Though USAID does not control the requirement that PSCs register on SAM and Dun & Bradstreet, they are bound by their Privacy Program to protect the PII of all employees, including personal services contractors. GSA is ending the government-wide use of DUNS provided by Dun & Bradstreet and will instead use unique entity identifier numbers on SAM.gov. GSA's announcement of the pivot to the unique entity identifier did not mention whether GSA would work with Dun & Bradstreet to remove PSC profiles from their website now that DUNS are not required. According to the USAID/M, as of January 2022, USAID has not released guidance to PSCs on what the switch to the unique entity identifier will mean for PSC profiles on Dun & Bradstreet.

## Use of Contractors Forces the Agency to Create and Fund Parallel Hiring and Management Structures

PSCs are personnel hired as procurements and USAID has needed to create hiring and management structures parallel to those for direct hires to support PSCs. For challenges with contractor management, OIG focused on PSCs because ISCs are managed by their contractor-employer; however, ISC management costs are paid by USAID as a part of the overall contract amount. As noted in a previous section, BHA and OTI embed staff across the Agency—in SEC, Office of General Counsel, M/OAA—to support the PSC hiring process. BHA and OTI also use program funds to staff contract specialists to supplement M/OAA's contract management of PSCs, which is an additional administrative cost to USAID for its use of the PSC mechanism. For example, OTI calculates that it costs nearly $11,000 for its contracts specialists to solicit and assemble a new PSC award.

M/OAA's Policy Division provides advice and develops policies on matters related to the use of personal services contracts. Due to the nature of personal services contracts, this responsibility extends beyond acquisition and assistance policy and includes interpreting personnel regulations for PSCs. Though one M/OAA employee said that they are not trained or well-versed in personnel regulations, they must review personnel rules for direct hires and interpret how they apply to PSCs. According to a USAID/M employee, two staff members in M/OAA are responsible for managing personnel rules for PSCs, while HCTM has 217 employees to cover the function for career staff.

M/OAA contracting officers also take on human resource functions for PSCs. One contracting officer interviewed explained that M/OAA manages PSCs as individual contracts, administering all post-award actions, including sick leave, medical leave, evacuations abroad, and employee misconduct. Though contracting officers are not specialists in personnel regulations, they advise PSCs on eligibility for personnel programs, such as Family and Medical Leave Act, where a

direct hire would go to a human resources specialist.[17] One M/OAA staff member discussed the burden placed on contract staff to handle the volume and lifecycle of contracts for PSCs. Another M/OAA staff member explained that they are overwhelmed from conducting "cradle to grave" award management, which differs from other agencies that typically separate the management of different parts of the hiring and management cycle for PSCs.

Since PSCs are procurements, if BHA and OTI want to keep a PSC beyond the one-year base term, they must renew the contract annually (up to a total of five years). The renewal process, known as "anniversary actions," includes administrative checks (of budgetary resources and status of security clearance) and a written performance evaluation by the PSC's supervisor. OTI estimated that its cost to prepare 115 PSC anniversary actions for M/OAA in FY 2020 was nearly $124,000. A study by USAID/M consolidated the administrative costs of managing the PSC mechanism to offices (some mentioned above) and M/OAA. The study found that in 2018, the administrative cost was approximately $17 million per year[18] to administer the former Bureau for Democracy, Conflict, and Humanitarian Assistance's 535 personal service contracts.

## USAID Lacks Data and Metrics on Contractors to Capture Costs, Inform Workforce Planning, and Promote Diversity

Overall, OTI stated that PSCs and ISCs are not tracked Agency-wide in the same way that direct hires are tracked in HRConnect, and that all employment data of PSCs and ISCs must be tracked manually. While PSC contracts are managed by USAID/M and overall statistics are reported in the Annual Financial Report, a senior Agency official said that there is not a way for USAID to know how many people work at the Agency as PSCs on a given day. According to M/OAA documentation, "there is almost no Agency-wide or commonly collected data on USPSC demographics, length of service as a USPSC, grade levels or other information that would enable a comparison to direct-hire employees."

USAID annually reports its total cost of operations in the Agency Financial Report, which comprises OE and program funds. The OE fund was established by Congress in 1976 to isolate the cost of doing business, or administrative funds. However, in 2003, the Government Accountability Office (GAO) found that USAID's OE do not capture the full cost of doing business since the Agency uses program funds to pay administrative and management expenses for contractors. As of March 2022, USAID's primary budget planning system is not able to track program-funded operational costs in the same way as the accounting system, and there is limited Agency guidance and oversight for reconciling these approaches. As a result, it makes it difficult to fully compare and communicate program funds and OE.

**Workforce Planning:** The Agency's workforce planning only accounts for civil service and foreign service employees, who comprise about 40 percent of the workforce, a percentage that does not include the 2,400 ISCs. Planning the remainder of the workforce is decentralized to the Bureaus, Offices, and Missions, enabling operational flexibility according to USAID.

---

[17] Several staff we interviewed noted that PSCs feel like "staplers, pencils, and paperclips" because they are solicited and have their contracts managed by M/OAA, while other employees receive human resources support from HCTM in the hiring, onboarding, and employment processes.
[18] USAID White Paper "Proposed Employer Matching Contribution for the USPSCs' 401(k) Plan" in final draft form as of April 21, 2021.

However, in 2010, GAO identified USAID's limited workforce planning as a core challenge in the Agency's ability to address long-term workforce needs. GAO recommended that USAID "develop a comprehensive workforce plan that accounts for USAID's total workforce, including non-direct-hire staff." GAO considers the recommendation "closed not implemented"—a classification GAO said it uses after four years of no relevant action by the Agency. As of 2020, the Agency acknowledges that comprehensive workforce planning is needed for all mechanisms.

**Diversity, Equity, and Inclusion:** One senior agency official stated that there is a lot more data USAID wants to capture to improve diversity in the workforce. At USAID, the Office of Diversity, Equity, Inclusion, and Accessibility (DEIA) processes do not include PSCs and ISCs. The U.S. Equal Opportunity Employment Commission (EEOC) enforces federal anti-discrimination law and requires annual diversity reporting from all agencies, but that requirement does not apply to contractors. As a result, USAID only reported direct hires employees to the EEOC in 2020 who make up about 40 percent of its employees.[19] That percentage does not include the 2,400 ISCs who support USAID's work. In its 2021-2024 Diversity, Equity, and Inclusion Strategy, the Agency committed to working to establish and implement a "data collection and evaluation plan for non-direct-hire employees capturing diversity and inclusion data where gaps exist."

PSCs and ISCs are hired through a procurement process, but OTI stated that there is no procurement requirement for PSCs or ISCs related to diversity and inclusion. However, the 2021 Executive Order on Advancing Racial Equity and Support for Underserved Communities Through the Federal Government requires the head of each agency to consult with the Office of Management and Budget (OMB) to produce a plan to identify any barriers to full and equal participation in agency procurement and contracting.

While not addressing the data and procurement challenges, USAID has taken steps to integrate DEIA into the PSC and ISC procurement process. For example, BHA added an interview question related to DEIA, and OTI told us they are altering language in PSC solicitations to make it more inclusive and are updating minimum qualifications with the goal of recruiting a more diverse workforce. A recently executed ISC contract for the Bureau for Development, Democracy, and Innovation requires the contractor-employer to develop a DEI plan, recruit using innovative channels, use cutting-edge hiring methods, and retain employees through a range of professional development and award/reward structures. Given that this is a recent approach, this language is not included in BHA and OTI's current ISC contract.

## Lack of Stakeholders' Unity and Funding Authority Have Hindered Implementation of Staffing Alternatives

USAID, BHA, and OTI, in coordination with internal and external stakeholders, have explored alternative staffing solutions to BHA and OTI's use of PSCs and ISCs. However, progress on proposed staffing solutions is hindered by lack of cohesion among stakeholders due to

---

[19] Equal Employment Opportunity Commission (EEOC) Management Directive 715 mandates an annual self-assessment by federal agencies to identify and eliminate barriers that prevent equal opportunities in the workplace.

competing interests. Additionally, USAID is constrained by lack of authority and funding caps imposed by Congress.

## USAID Has Explored Alternative Staffing Models

USAID has proposed various staffing solutions, including greater use of existing direct hire authority, as well as two new noncareer staffing types that are time limited, but provide greater flexibility and benefits. The Agency also studied a procurement alternative that would have one organization hire PSCs through an indefinite delivery/indefinite quantity contract, and had McKinsey & Company provide an organizational review on OTI.[20] Additionally, Agency leaders, including former Administrator Mark Green and the heads of USAID/M and HCTM, have in congressional testimony and statements discussed staffing challenges, the need for a more dynamic workforce, and potential solutions. Table 2 shows some of the staffing solutions USAID has explored as alternatives to BHA and OTI's use of PSCs and ISCs.

---

[20] The McKinsey & Company study recommended that OTI pursue a new hiring mechanism similar to the FSL.

## Table 2: Proposed Alternatives to Use of Contractors by USAID

| | Civil Service (CS) | Foreign Service (FS) | Foreign Service Limited (FSL) | FSL for Crises | Adaptive Personnel Project (APP) |
|---|---|---|---|---|---|
| **Description** | Title 5 direct hire mechanism[21] | Title 22 direct hire mechanism[22] | Title 22 direct hire, congressionally authorized since FY 2004, term-limited, noncareer staffing mechanism. Congress places a dollar cap on the number of FSLs hired each year. USAID cannot use notwithstanding authority to hire above that cap. | Title 22, term-limited, noncareer staffing mechanism. Unlike FSL, FSL for Crises is managed to budget and programs and these positions cannot bid on FS career positions or fill FS or CS positions. | Title 5 time-limited, excepted service staffing mechanism for certain noncareer positions to be hired across BHA, OTI, and Bureau for Global Health (GH). Different efforts have focused on funding this mechanism through program funds or OE. |
| **Management** | HCTM | HCTM | HCTM | HCTM for administrative aspects, such as recruitment and onboarding. Bureaus manage budgeting and programming. | Bureaus |
| **Funding** | OE | OE | OE (for Overseas Contingency Operations only) or program funds | Program funds | OE or program funds |
| **Advantages to Workforce and Operations** | Full authority to perform inherently governmental functions | Full authority to perform inherently governmental functions | Can fully represent USAID's interests, flexibly meet short-term contingency requirements overseas, and supervise direct hires. | Projected to allow for the acquisition of difficult-to-fill and/or specialized technical talent for limited durations in a noncareer capacity. | Projected to improve workforce planning, agility in hiring, and recruitment and retention of staff by providing competitive benefits. Designed to reduce management burden on bureaus and increase |

---

[21] Title 5 of the U.S. Code contains those laws that pertain to the Civil Service.
[22] Title 22 of the U.S. Code contains those laws that pertain to the Foreign Service.

|  | Civil Service (CS) | Foreign Service (FS) | Foreign Service Limited (FSL) | FSL for Crises | Adaptive Personnel Project (APP) |
|---|---|---|---|---|---|
|  |  |  |  |  | efficiency by extending inherently governmental authorities. |
| **Status as of January 2022** | In use but limited by OE funding. | In use but limited by OE funding. USAID reformulated the crisis, stabilization, and governance FSO backstop to support humanitarian assistance efforts and strengthen linkages between development and humanitarian programming.[23] | In use with requirement for congressional reauthorization annually. Since 2009, Congress has allowed USAID to extend FSL appointments for four years after the initial five-year appointment. | Not approved for use. OTI stated that HCTM confirmed that there may no longer be an FSL ceiling to utilize for the FSL for Crises mechanism in BHA, GH, and OTI.[24] | Not approved for use. Congress did not authorize funds for the APP and required the Administrator to consult with and notify the committee of "any new hiring authority that requires the approval of the Office of Personnel Management." |

Source: OIG analysis of information from USAID.

---

[23] On November 5, 2021, the humanitarian assistance backstop (BS-70) was launched by the Agency. BS-70 will provide a pathway for career Foreign Service Officers to support humanitarian assistance efforts and help strengthen linkages between development and humanitarian programming.
[24] Congress restricts USAID's FSL spending to $110 million. BHA and OTI cannot use notwithstanding authority to hire beyond that cap due to the statutes connected to the mechanism.

None of these efforts have resulted in changes to BHA and OTI's reliance on PSCs and ISCs. Competing stakeholder demands and budget bifurcation continue to constrain progress on other staffing models.

## Competing Stakeholder Interests Have Limited Progress on Establishing an Alternative Staffing Model

Stakeholders lack agreement on a staffing alternative to the use of ISCs and PSCs in terms of which unit should manage the hiring mechanism and which staffing mechanism would be most appropriate for the mission. Each group advocates for alternatives that meet its specific interests.

There are differing opinions among stakeholders over which operating unit should manage these hiring mechanisms—the bureaus or HCTM. In their response to OIG, BHA and OTI jointly stated that staffing for their unique programming would not be possible "using Agency support," and BHA and OTI staff said that their own hiring apparatuses parallel to HCTM allow for a more fast, flexible, and specialized staff. However, two HCTM staff said that they already work closely with bureaus to fill direct hire needs, and one senior Agency official said that HCTM can hire for positions faster than BHA and OTI can procure PSCs.

There are also competing viewpoints on the extent to which FSOs can be integrated into BHA and OTI. The American Foreign Service Association (AFSA) has stated that the Agency's "passive neglect and active mismanagement" has resulted in poor integration of FSOs into BHA and OTI.[25] However, one USAID official cited the bidding cycle as a challenge in integrating more FSOs into the Agency workforce, and another USAID staff member said that certain parts of the foreign service are not receptive to bureau concerns. Additionally, integrating more direct hire positions into BHA and OTI is complicated by the fact that PSCs cannot supervise direct hires, including FSOs and CS. USAID's ADS poses this limitation, as the FAR largely leaves what functions contractors can and cannot perform up to each agency.

Related to integration issues is a perceived general tension, noted by individuals interviewed by OIG, that exists between BHA and OTI and foreign service staff. One FSO said that OTI is not a welcoming environment, and another USAID senior official stated that FSOs are told not go to what is now BHA because it will ruin their career. These sentiments are echoed by other FSOs, who left BHA and OTI in part due to the working environment and career limitations.

The FSL mechanism addresses some of the limitations of CS, FS, and contracted staff, as it is a noncareer, direct hire mechanism. FSLs can also oversee direct hires and can be paid for with program funds. However, FSLs are currently limited by a funding cap, and one stakeholder indicated Foreign Service concern that positions able to be filled by FSOs are instead filled by FSLs. Additionally, two Agency staff members said that AFSA has prevented additional FSL positions in OTI, and one USAID staff said they receive unclear guidance on FSL use.

Two senior Agency officials and one FSO stated that the specialized experience needed to implement BHA and OTI activities could be found in other staffing mechanisms such as FS, CS, and alternatives the Agency has explored but has not implemented. Two Agency officials

---

[25] AFSA is a professional organization and union that advocates on behalf of the U.S. Foreign Service.

recognized that PSCs are mostly generalists that deepen their skills through a combination of field experience and training, and another Agency employee said that while specific expertise is needed at times, some positions are not broadened enough and block out qualified people.

## Use of Staffing Alternatives Is Limited by Lack of Authority, Spending Caps, and Bifurcated Funding Streams

BHA and OTI still rely on PSCs and ISCs and are constrained in expanding the use of direct hires due to limited OE funding. BHA and OTI also cannot use two of the five alternatives—FSL for Crisis and APP—because they have either not yet been authorized for use or the Agency does not have sufficient funding. The APP pilot was initially greenlit by OMB in 2019 but ultimately did not receive congressional approval, as they did not want to authorize the use of program funds for a noncareer hiring mechanism. Instead, Congress encouraged USAID to improve its use of the FSL mechanism. Congress also indicated they were not supportive of using OE for a new noncareer hiring authority. Therefore, USAID turned its attention to utilizing the FSL mechanism in a more flexible way, which resulted in FSL for Crises. As of June 2021, OTI stated that HCTM indicated that FSL for Crises may no longer have funding available. However, USAID is continuing to pursue the FSL for Crises as well as seek congressional authorization to use program funds to hire Title 5 excepted service time limited positions in BHA, OTI, and GH (similar to APP but without OPM needing to create a new hiring schedule).

BHA and OTI are limited in expanding the use of FSLs due to a spending cap, which is not to exceed $110 million for FY 2021. The FSL mechanism has been available to USAID since 2004, and the restrictions placed by Congress have changed over time. The authority for USAID to hire FSLs is contained in annual appropriations legislation, meaning that there is no guarantee that Congress will include it year to year. Restrictions and funding caps may factor into challenges faced by bureaus when determining how or when to use them, as acknowledged by stakeholders in BHA and OTI.

# Conclusion

BHA and OTI have become reliant on PSCs and ISCs as a result of limitations caused by USAID's bifurcated funding structure. Both BHA and OTI have fewer OE-funded staff proportional to their program funding, limiting their ability to integrate direct hire positions, which forces them to hire contractors with program funds. Additional limitations impede the Agency's ability to implement alternative staffing models that may be better suited for increasingly protracted crises that require personnel who can be there for long-term responses. Within these institutional constraints, PSCs and ISCs allow for staffing flexibility, enabling BHA and OTI to determine the types of positions they need and rapidly deploy surge PSCs. However, relying on these contracting mechanisms to fill long-term needs results in significant challenges for both the Agency and PSCs and ISCs themselves. Challenges include how to recruit and retain contractors, including consideration of benefits provided to direct hires that are not available for contractors and ensuring contractors' safety and privacy.

While USAID bureaus and offices have considered and developed options to address PSC and ISC challenges, those efforts have been hindered by a lack of data on the program funding being used for administrative costs and human capital metrics about how best to manage contractors. Without systematically collecting robust and reliable data, including on diversity and inclusion for contracting staff, the Agency will be continually challenged to formulate a comprehensive workforce plan. Data is also important for communicating current use of funding to external stakeholders, including Congress—which has the authority to change the laws governing funding and staffing regulations.

The recommendations only include PSCs and ISCs in BHA and OTI—the focus of this evaluation. However, the recommendations could apply to PSCs and ISCs throughout the Agency.

# Recommendations

We recommend that Deputy Administrator for Management and Resources oversee that USAID/M, in coordination with BHA and OTI, take the following actions:

1. Identify, track, and publicly report all costs associated with the PSC and ISC mechanisms, fully accounting for program funding used for administrative, management, and support expenses.

We recommend that Deputy Administrator for Management and Resources oversee that HCTM, in consultation with BHA and OTI:

2. Incorporate PSC and ISC staffing mechanisms into its workforce planning, including through tracking relevant direct hire metrics, such as the number of employees and their pay levels and responsibilities.

We recommend that the Deputy Administrator for Management and Resources oversee that HCTM, in coordination with BHA, OTI, and other stakeholders:

3. Conduct a workforce assessment and develop a comprehensive plan with options and actionable steps for how to create a sustainable humanitarian and stabilization workforce.

We recommend that the Office of Diversity, Equity, Inclusion, and Accessibility, in consultation with M/OAA:

4. Create a Diversity, Equity, and Inclusion strategy for its contractor workforce, including reviewing its data to determine whether PSC and ISC opportunities are available on an equal basis to all eligible providers. This includes whether there are any barriers to full and equal participation to its PSC and ISC staffing pathways and whether there are opportunities to build on diversity efforts in the ISC procurement process.

We recommend that Deputy Administrator for Management and Resources oversee that M/OAA take the following actions:

5. Provide guidance to PSCs on how to contact Dun & Bradstreet to remove their information from its website, now that they are no longer required to maintain a DUNS profile to be in good standing.

6. Assess the options for consistent safety standards and procedures for ISCs in future contracts and implement identified options as appropriate.

7. Issue clear guidance on travel safety standards and privileges for PSCs as they relate to Chief of Mission authority.

# OIG Response to Agency Comments

We provided our draft report to USAID on June 17, 2022. On August 5, 2022, we received the Agency's response, which is included as Appendix C of this report.

The draft report included seven recommendations. We acknowledge management decisions on all recommendations. While the Agency disagreed with Recommendation 6, we consider the explanation they provided in Agency Comments as a sufficient assessment of options for consistent safety standards and procedures for ISCs in future contracts and as such, we consider that recommendation closed. We consider four recommendations resolved but open pending completion of planned activities (recommendations 1, 3, 4, 5). Finally, we disagree with the management decisions for recommendations 2 and 7, and as such, consider those recommendations open and unresolved for the reasons below.

- Recommendation 2: USAID partially agreed and noted that both PSC and ISC staffing mechanisms are being incorporated into workforce planning. The Agency also stated that it will incorporate USPSC staffing data, pay levels, and funding information provided by USAID/M. We agree that this fulfills the USPSC aspect of the recommendation. However, USAID indicated that there are no tracking mechanisms for ISC staffing. To resolve this recommendation, USAID should demonstrate that they have tracked and incorporated some ISC staffing metrics into Agency workforce planning.

- Recommendation 7: USAID disagreed with this recommendation, noting that Agency guidance is outlined in the AIDAR. However, we found that there was widespread confusion around travel safety standards and privileges for PSCs during crises. To resolve this recommendation, USAID should provide a clarifying resource, summarizing what PSCs are entitled to in terms of safety standards and privileges as they relate to Chief of Mission authority in the case of evacuations and other emergency situations, and make that information readily available to PSCs.

# Appendix A. Scope and Methodology

We conducted our work from January 2021 to May 2022 in accordance with the Council of the Inspectors General on Integrity and Efficiency's Quality Standards for Inspection and Evaluation.

We conducted this evaluation to:

1. Assess advantages associated with BHA and OTI's use of PSCs and ISCs,

2. Assess challenges associated with BHA and OTI's use of PSCs and ISCs, and

3. Report on the alternatives that USAID has explored to BHA and OTI's use of PSCs and ISCs.

We conducted 19 semi-structured interviews with staff from BHA, OTI, Office of Human Capital and Talent Management (HCTM), Bureau for Management, Office of General Counsel, the American Foreign Service Association (AFSA), USAID's PSC Association, and senior USAID leadership.

To assess the advantages associated with BHA and OTI's use of PSCs and ISCs, we reviewed and compared documentary and testimonial evidence. We also collected publicly available data from ForeignAssistance.gov to calculate the funding proportions of OE and program funds to USAID, and to BHA and OTI.

To assess the challenges associated with BHA and OTI's use of PSCs and ISCs, we reviewed and compared documentary and testimonial evidence. To assess privacy concerns of PSCs, we created a methodology to test claims made by employees and the Agency that contractor personally identifiable information (PII) was posted on SAM.gov and Dun & Bradstreet's website.

To report on alternatives to PSCs and ISCs that USAID has explored, we reviewed and compared documentary and testimonial evidence.

See Appendix B for a USAID organizational chart and the Bureaus/offices that fall within the scope of this evaluation.

# Appendix B. Organizational Chart

We focused on the use of the PSCs and ISCs in BHA and OTI. We also gathered data from the organizational units of USAID that support the BHA and OTI workforce, including both direct hire employees and contractor staff. HCTM manages the entire organization's direct hire workforce. USAID/M, and more specifically M/OAA, manages the procurement process of PSCs and the overall ISC contract process. See Chart 1 for a full USAID organizational chart, highlighting in orange the bureaus and offices in this evaluation.

**Chart 1: USAID Organizational Chart Highlighting BHA, OTI, HCTM, USAID/M, and M/OAA**



Source: OIG graphic based on USAID's organizational chart.

# Appendix C. Agency Comments



**MEMORANDUM**

| | |
|---|---|
| **TO:** | Office of Audit, Acting Assistant Inspector General for Audit, Van Nguyen |
| **FROM:** | Assistant Administrator for the Bureau for Management, Colleen Allen |
| **DATE:** | August 5, 2022 |
| **SUBJECT:** | Management Comments to Respond to the Draft Evaluation Report Produced by the Office of Inspector General (OIG) titled, *Contractor Use for Disaster and Stabilization Responses: USAID Is Constrained by Funding Structure but Better Data Collection Could Improve Workforce Planning* (E-000-22-002-M) |

The U.S. Agency for International Development (USAID) would like to thank the Office of Inspector General (OIG) for the opportunity to provide comments on the subject draft report.

USAID appreciates the attention to the important management challenges associated with the Bureau of Humanitarian Assistance (BHA) and the Bureau for Conflict Prevention and Stabilization, Office of Transition Initiatives's (CPS/OTI) use of Personnel Services Contracts (PSC) and Institutional Support Contractors (ISC). In particular, USAID is unique within the Federal government in receiving "operating expenses" funds which may be used for staff, separate from the program funds for actual program implementation and oversight. The fact that USAID receives funds for permanent staff only through a separate agency "operating expenses" account means that the Agency is unable to adapt to changing programmatic needs in the humanitarian and transition spaces, which are by definition unpredictable. At least two publicly available reports produced for Congress have acknowledged this difficulty.[26] A discussion of the origin, intent, actual consequences, and perhaps potential alternatives for the "operating expenses" appropriations restriction for USAID could inform potential solutions to the root cause of the challenge this OIG evaluation advises on.

The Agency agrees with four of the seven recommendations, and has provided plans for implementing them, and reports on significant progress already made.

---

[26] See, e.g., the GAO report, "Foreign Assistance: USAID's Operating Expense Account Does Not Fully Reflect the Cost of Delivering Foreign Assistance, GAO-03-1152R (Sep 30, 2003) (available at https://www.gao.gov/products/gao-03-1152r), and "Beyond Assistance: The HELP Commission Report on Foreign Assistance Reform" (December 2007) (available at http://helpcommission.info/)

**COMMENTS BY THE U.S. AGENCY FOR INTERNATIONAL DEVELOPMENT (USAID) ON THE REPORT RELEASED BY THE USAID OFFICE OF THE INSPECTOR GENERAL (OIG) TITLED,** *Contractor Use for Disaster and Stabilization Responses: USAID Is Constrained by Funding Structure but Better Data Collection Could Improve Workforce Planning* (E-000-22-002-M)

Please find below the management comments from USAID on the draft report produced by the USAID OIG, which contains seven recommendations for USAID.

**Recommendation 1:** We recommend that Deputy Administrator for Management and Resources oversee that USAID/M, in coordination with BHA and OTI, take the following actions: Identify, track, and publicly report all costs associated with the PSC and ISC mechanisms, fully accounting for program funding used for administrative, management, and support expenses.

- **Management Comments: USAID/M agrees with this recommendation.**

    USAID agrees with the recommendation but notes that the Bureau for Humanitarian Assistance (BHA) and the Bureau for Conflict Prevention and Stabilization, Office of Transition Initiatives (CPS/OTI) already identify, track, and publicly report program-funded administrative, management, and support costs associated with the Personnel Service Contracts (PSC) and ISC (Institutional Support Contractor) mechanisms.

    *Administrative, management, and support costs* associated with the PSC and ISC mechanisms are accounted for in the Foreign Assistance Framework and USAID accounting system account under the Administration and Oversight Program Area. The definition for the Administration and Oversight Program Area is as follows:

    > *"Supports the following illustrative program-funded costs: salaries of US, FSN, and TCN and other staff such as PSCs, RSSAs, PASAs, CASUs working for the US Government managing, administering, and supporting programs and their program-funded benefits such as housing, travel, transportation, education allowances etc; institutional contractors that provide such staff, rent, IT services, the program-funded share of utilities, staff training costs and the cost of developing and administering training programs, equipment and supplies, ICASS, vehicle fuel and maintenance, maintenance contracts, janitorial services, operational unit web page development and maintenance, outreach such as publications and the cost of their preparation (including staff costs), and technical assistance to ensure USG compliance with regulations."*

    As these types of commitments and obligations are incurred, they are tagged in USAID's accounting system (Phoenix) with the code for the Administration and Oversight Program Area and then can be readily extracted through the various ways USAID financial data is reported. In addition, CPS/OTI and BHA each have their own internal systems and processes for tracking administrative support and staffing expenses;

however, the Foreign Assistance Framework as reflected in the USAID accounting system (Phoenix) is the official Agency approach to tracking such costs.

During the Agency's annual Operational Resources Request (ORR) process, information on projected "program funded operational costs" is reported to the Bureau for Management (program funded operational costs are essentially the same thing as the Administration and Oversight Program Area). Actual data is also readily available to anyone in the Agency via Phoenix reporting tools and the Enterprise Reporting Portal.  BHA and CPS/OTI track such costs, in similar cost categorizations, for their own planning and accounting purposes.

The Bureau for Management, Office of Management Policy, Budget, and Performance (M/MPBP) will confer with BHA and CPS/OTI to determine if there is a need to revise the existing reporting template for program funded administrative, management, and support costs associated with the PSC and ISC mechanisms to ensure standardized data is collected from BHA and CPS/OTI and reported by the Agency.

- **Target Completion Date**:  06/30/23

**Recommendation 2:** We recommend that Deputy Administrator for Management and Resources oversee that HCTM, in consultation with BHA and OTI: Incorporate PSC and ISC staffing mechanisms into its workforce planning, including through tracking relevant direct hire metrics, such as the number of employees and their pay levels and responsibilities.

- **Management Comments**:  **USAID/HCTM partially agrees with this recommendation.**

  While the Office of Human Capital and Talent Management (HCTM) is in the process of incorporating PSC and ISC staffing mechanisms into workforce planning reporting, OIG's recommendation includes tracking pay levels, which USAID/M owns and USAID/HCTM does not collect. Therefore, USAID/M will provide USPSCs staffing data, pay levels, and funding information to HCTM to incorporate into its workforce planning reporting.  However, there are no tracking mechanisms in place for ISC staffing.

- **Target Completion Date**:  06/30/23

**Recommendation 3:** We recommend that the Deputy Administrator for Management and Resources oversee that HCTM, in coordination with BHA, OTI, and other stakeholders: Conduct a workforce assessment and develop a comprehensive plan with options and actionable steps for how to create a sustainable humanitarian and stabilization workforce.

- **Management Comments**: **USAID/HCTM agrees with this recommendation.**

  USAID/HCTM is working on overall Agency workforce assessment and planning capabilities, which Bureaus and Independent Offices can thereafter use with USAID/HCTM support. In FY 2021, USAID/HCTM worked with BHA on early workforce planning assessments to address organizational and workforce planning gaps.

This particular support concluded in or around December 2021. While a separate phase of this support was envisioned to continue, the lateness of the FY 2022 appropriations prevented it from continuing. BHA is continuing this work internally.

- **Target Completion Date**: 09/30/23

**Recommendation 4:**  We recommend that the Office of Diversity, Equity, Inclusion, and Accessibility, in consultation with M/OAA: Create a Diversity, Equity, and Inclusion strategy for its contractor workforce, including reviewing its data on PSC and ISC opportunities. This includes identifying whether there are any potential barriers to full and equal participation to its PSC and ISC staffing pathways and whether there are opportunities to build on diversity efforts in the ISC procurement process.

- **Management Comments:  USAID/DEIA partially agrees with this recommendation**

  USAID/DEIA will conduct targeted analysis for its contractor workforce, including reviewing data to determine whether equity and equal opportunity exists within PSC and ISC opportunities. USAID will do this in accordance with our current DEIA strategy which was approved July 26, 2022. There is no need to create an additional strategy.

- **Target Completion Date**:  06/30/23

**Recommendation 5:** We recommend that Deputy Administrator for Management and Resources oversee that M/OAA take the following actions: Provide guidance to PSCs on how to contact Dun & Bradstreet to remove their information from its website, now that they are no longer required to maintain a DUNS profile to be in good standing.

- **Management Comments:  USAID/M agrees with this recommendation**

  USAID/M agrees with this recommendation. The Bureau for Management, Office of Acquisition and Assistance (M/OAA) will provide guidance to the PSCs on how to contact Dun and Bradstreet (D&B) with a letter seeking removal of their profile. However, please note that D&B has a contract with the General Services Administration (GSA) and they will have the ultimate prioritization authority with regard to contract terms.

- **Target Completion Date**: 06/30/23

**Recommendation 6:** We recommend that the Deputy Administrator for Management and Resources oversee that M/OAA take the following actions: Assess the options for consistent safety standards and procedures for ISCs in future contracts and implement identified options as appropriate.

- **Management Comments:  USAID/M disagrees with this recommendation**

  As each ISC organization has the freedom to administer their own travel safety

procedures and safety plans, USAID does not have the authority to stipulate travel safety procedures and security plans for these organizations. If the expectation is that the Agency standardize all the ISCs travel safety procedures and include an updated safety plan, OMB would have to allow the Agency to do this and it would require rulemaking. Moreover, it would be unlikely for OMB to allow a government agency to interfere with an organization's travel safety procedures and safety plans. Further, this recommendation appears to be beyond the scope of the stated objectives of this audit, which were to (1) assess advantages associated with BHA and CPS/OTI's use of PSCs and ISCs, (2) assess challenges associated with BHA and CPS/OTI's use of PSCs and ISCs, and (3) report on the alternatives that USAID has explored to BHA and CPS/OTI's use of PSCs and ISCs.

**Recommendation 7:** We recommend that the Deputy Administrator for Management and Resources oversee that M/OAA take the following actions: Issue clear guidance on travel safety standards and privileges for PSCs as they relate to Chief of Mission authority.

- **<u>Management Comments</u>: USAID/M disagrees with this recommendation as clear guidance is already codified in the AIDAR.**

  USAID Acquisition Regulation (AIDAR) clauses are incorporated as a term and condition of every PSC contract and guidance on travel safety and privileges for PSCs as they relate to Chief of Mission authority are specified in two paragraphs in AIDAR Appendix D (linked here) USAID Acquisition Regulation (AIDAR) - A Mandatory Reference to ADS 300 Series Acquisition Chapters. As stated in Appendix D, 6. DIFFERENTIAL AND ALLOWANCES (JUN 1990) page 204,

  > 6) Payments During Evacuation. The Standardized Regulations (Government Civilians, Foreign Areas) provide the authority for efficient, orderly, and equitable procedure for the payment of compensation, post differential and allowances in the event of an emergency evacuation of employees or their dependents, or both, from duty stations for military or other reasons or because of imminent danger to their lives. If evacuation has been authorized by the Mission Director, the contractor will receive payments during evacuation for himself/herself and authorized dependents evacuated from their post of assignment in accordance with the Standardized Regulations (Government Civilians, Foreign Areas), Chapter 600, and the Federal Travel Regulations, as from time to time amended.

  Further, as stated in Appendix D, 10. TRAVEL AND TRANSPORTATION EXPENSES (JUL 1993) page 208,

  > (i) Emergency and Irregular Travel and Transportation. Emergency transportation costs and travel allowances while enroute, as provided in this section, will be reimbursed not to exceed amounts authorized by the Foreign Service Travel Regulations for USAID direct hire employees in like circumstances under the following conditions:

  > (1) The costs of going from post of duty in the Cooperating Country to the employee's permanent, legal place of residence at the time he or she was

employed for work under this contract or other location for contractor employees and dependents and returning to the post of duty, subject to the prior written approval of the Mission Director that such travel is necessary for one of the following reasons.

> (i) Need for medical care beyond that available within the area to which the employee is assigned, or serious effect on physical or mental health if residence is continued at the assigned post of duty. The Mission Director may authorize a medical attendant to accompany the employee at contract expense if, based on medical opinion, such an attendant is necessary.

> (ii) Death, or serious illness or injury of a member of the immediate family of the employee or the immediate family of the employee's spouse.

(2) When, for any reason, the Mission Director determines it is necessary to evacuate the contractor or contractor's dependents, the contractor will be reimbursed for travel and transportation expenses and travel allowance while enroute, for the cost of the individuals going from post of duty in the Cooperating Country to the employee's permanent, legal place of residence at the time he or she was employed for work under this contract or other approved location.  The return of such employees and dependents may also be authorized by the Mission Director when, in his/her discretion, he/ she determines it is prudent to do so.

(3) The Mission Director may also authorize emergency or irregular travel and transportation in other situations, when in his/her opinion, the circumstances warrant such action. The authorization shall include the kind of leave to be used and appropriate restrictions as to time away from post, transportation of personal and household effects, etc.

In view of the above, we request that the OIG inform USAID when it agrees or disagrees with the management comments.

# Appendix D. Major Contributors to This Report

Members of the evaluation team include:

- Alan MacMullin, Inspections, Evaluations, and Special Projects Director
- Brianna Schletz, Inspections, Evaluations, and Special Projects Deputy Director
- Jessica Ernst, Lead Analyst
- Megan Worthington, Lead Analyst
- Paul Donnelly, Analyst
- Erica Greenwald, Analyst

The evaluation team would also like to acknowledge contributions from Tanner Horton-Jones, Wangui Kiundi, Ashley Obando, Tovah Rom, and Adam Walsh.



Visit our website at oig.usaid.gov

Follow us on Twitter at @USAID_OIG and
LinkedIn at USAID Office of Inspector General

**OFFICE OF INSPECTOR GENERAL**
U.S. Agency for International Development

**Report Waste, Fraud, and Abuse**
ig.hotline@usaid.gov  |  Online Complaint Form
202-712-1023 or 800-230-6539