**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| **PERSONAL SERVICES** ) | |
| **CONTRACTOR ASSOCIATION,** ) | |
| ) | |
| *Plaintiff* ) | **Case No. 1:25-cv-469-CJN** |
| ) | |
| **v.** ) | |
| ) | |
| **DONALD TRUMP, et al.,** ) | |
| ) | |
| *Defendants.* ) | |
| _____ ) | |

**PLAINTIFF PSC ASSOCIATION'S MEMORANDUM
ADDRESSING THE D.C. CIRCUIT MOTIONS PANEL AND EN BANC RULINGS
IN APPEALS FROM PRELIMINARY RELIEF GRANTED BY JUDGE LAMBERTH
IN *WIDAKUSWARA* AND RELATED CASES**

# Contents

Table of Authorities.................................................................................................... ii

Glossary ............................................................................................................... v

Introduction ........................................................................................................ 1

Argument ............................................................................................................ 7

    I.     Neither the motions panel's nor the en banc court's rulings are binding on
        this court.................................................................................................... 7

    II.    Although not binding on this court, the en banc court's orders are instructive
        about this Court's subject-matter jurisdiction. ...................................... 8

    III.   Although not binding, the D.C. Circuit's rulings other preliminary injunctions
        are instructive as to the appropriate scope of relief in this case.......................... 12

Conclusion ......................................................................................................... 15

## Table of Authorities

**Page(s)**

**Cases**

*Abramowitz v. Lake*,
  2025 WL 1176796 (D.D.C. April 22, 2025)................................................................2

*Abramowitz v. Lake*,
  Case No. 25-cv-887 (D.D.C.), Appeal No. 25-5145 (D.C. Cir.) ..................................... *passim*

*AIDS Vaccine Advoc. Coal. v. United States Dep't of State*,
  No. CV 25-00400 (AHA), 2025 WL 1380421 (D.D.C. May 13, 2025)................................12

*Am. Ass'n of Colleges for Teacher Educ. v. McMahon*,
  No. 25-1281, 2025 WL 1232337 (4th Cir. April 10, 2025)....................................12

*Am. Bar Ass'n v. U.S. Dep't of Justice*,
  No. 25-CV-1263 (CRC), 2025 WL 1388891 (D.D.C. May 14, 2025) ..................................12

*Ass'n of Am. Univs. v. Dep't of Energy*,
  No. 25-CV-10912-ADB, 2025 WL 1414135 (D. Mass. May 15, 2025) ..............................12

*Chicago Women in Trades v. Trump*,
  No. 25 C 2005, 2025 WL 1114466 (N.D. Ill. Apr. 14, 2025)....................................12

*Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Human Servs.*,
  2025 WL 1233674 (N.D. Cal. April 29, 2026), *stay pending appeal denied,*
  No. 25-808, 2025 WL 1393876 (9th Cir. May 14, 2025)........................................12

*Dep't of State v. AIDS Vaccine Adv. Coalition (AVAC)*,
  145 S. Ct. 753 (Mar. 5, 2025) (per curiam) ..................................................11, 12

*Department of Education v. California*,
  145 S. Ct. 966 (2025)..........................................................................11, 12

*Maine v. United States Dep't of Agric.*,
  No. 25-CV-00131-JAW, 2025 WL 1088946 (D. Me. Apr. 11, 2025)....................................12

*Maryland v. United States Dep't of Agric.*,
  No. 25-1338, 2025 WL 1073657 (4th Cir. April 9, 2025)........................................12

*Massachusetts Fair Housing Ctr. v. Dep't of Hous. & Urban Dev.*,
  No. 25-30041-RGS, 2025 WL 1225481 (D. Mass. April 14, 2025)........................................12

*Massachusetts v. Kennedy*,
  No. CV 25-10814-WGY, 2025 WL 1371785 (D. Mass. May 12, 2025) ................................12

*Merrill v. Milligan,*
142 S. Ct. 879 (2022) (Kavanaugh, J., concurring) ...............................................................7

*Middle E. Broad. Networks v. U.S.,*
Case No. 25-cv-966 (D.D.C.), Appeal No. 25-5150 (D.C. Cir.) .......................................1, 2, 7

*Middle East Broad. Networks, Inc. v. United States,*
2025 WL 1378735 (D.C. Cir. May 7, 2025).......................................................................7, 10

*Nat'l Treasury Employees Union v. Vought,*
Appeal No. 25-5091 (D.C. Cir.) .............................................................................................14

*NTEU v. Vought,*
Case No. 26-0381 (ABJ), 2025 WL 942772 (D.D.C. March 28, 2025) ...............................14

*Pippenger v. U.S. DOGE Serv.,*
No. 25-cv-1090 (BAH), 2025 WL 1143845 (D.D.C. April 17, 2025) ...................................12

*Radio Free Asia (RFA) v. U.S.,*
Case No. 26-cv-907 (D.D.C.), Appeal No. 25-515 (D.C. Cir.) ...................................1, 2, 3, 7

*Radio Free Asia v. United States,*
2025 WL 1291342 (D.D.C. April 25, 2025)............................................................................3

*Rhode Island v. Trump,*
No. 25-cv-128-JJM, 2025 WL 1303868 (D.R.I. May 6, 2025) ............................................12

*S. Educ. Found. v. United States Dep't of Educ.,*
No. CV 25-1079 (PLF), 2025 WL 1453047 (D.D.C. May 21, 2025).....................................11

*Solutions in Hometown Connections v. Noem,*
No. 25-cv-885-LKG, 2025 WL 1530318 (D. Md. May 29, 2025)..........................................12

*Somerville Pub. Schools v. McMahon,*
Appeal No. 25-1495, 2025 WL 1576570 (1st Cir. June 4, 2025)...........................................13

*The Sustainability Inst. v. Donald J. Trump,*
No. 2:25-CV-2152-RMG, 2025 WL 1486978 (D.S.C. Apr. 29, 2025), *stay
pending appeal denied,* 2025 WL 1486979 (D.S.C. May 20, 2025) ......................................12

*Webster v. Doe,*
486 U.S. 592 (1988)...............................................................................................................11

*Widakuswara v. Lake,*
Case No. 25-cv-1015 (D.D.C.), Appeal No. 25-5144 (D.C. Cir.) ................................. *passim*

*Widakuswara v. Lake (Widakuswara I),*
2025 WL 1166400 (D.D.C. April 22, 2025)........................................................................1, 2

*Widakuswara v. Lake* (*Widakuswara II*),
  2025 WL 1288817 (D.C. Cir. May 3, 2025)................................................................. *passim*

*Widakuswara v. Lake* (*Widakuswara III*),
  2025 WL 1521355 (D.C. Cir. May 28, 2025) (en banc).......................................................6, 7

*Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.*,
  No. 1:25-CV-00097-MSM-PAS, 2025 WL 1116157 (D.R.I. Apr. 15, 2025) ........................12

**Statutes**

28 U.S.C. § 1331 ...................................................................................................................12

Administrative Procedure Act.................................................................................................4

Consolidated Appropriations Act, 2024, Div. F. ...................................................................9

138 Stat. 735 ..........................................................................................................................9

138 Stat. 740 ..........................................................................................................................10

**Other Authorities**

D.C. Cir. Rule 26(e)(2) ..........................................................................................................8

# GLOSSARY

| | |
|---|---|
| CDA | Contract Disputes Act |
| CFC | Court of Federal Claims |
| MBN | Mideast Broadcast Network |
| PSC | Personal Services Contractor |
| RFA | Radio Free Asia |
| The Networks | RFA and MBN |
| NTEU | National Treasury Employees Union |
| USAGM | United States Agency for Global Media |
| VOA | Voice of America |

| | |
|---|---|
| Case No. 25-cv-1015 | *Widakuswara v. Lake* (D.D.C.) (RCL) |
| Case No. 25-cv-887 | *Abramowitz v. Lake* (D.D.C.) (RCL) |
| Case No. 25-cv-966 | *MBN v. U.S.* (D.D.C.) (RCL) |
| Case No. 25-cv-907 | *RFA v. U.S.* (D.D.C.) (RCL) |
| Case No. 25-cv-799 | *RFE/RL v. U.S.* (D.D.C.) (RCL) |

| | |
|---|---|
| Appeal No. 25-5144 | *Widakuswara v. Lake* (D.C. Cir.) |
| Appeal No. 25-5145 | *Abramowitz v. Lake* (D.C. Cir.) |
| Appeal No. 25-5150 | *MBN v. U.S.* (D.C. Cir.) |
| Appeal No. 25-5151 | *RFA v. U.S.* (D.C. Cir.) |
| Appeal No. 25-5158 | *RFE/RL v. U.S.* (D.C. Cir.) |

## INTRODUCTION

Several appeals from preliminary injunctions restraining aspects of the Administration's dismantling of the United States Agency for Global Media (USAGM) are now pending before the D.C. Circuit, including: **(1)** *Widakuswara v. Lake*, Case No. 25-cv-1015 (D.D.C.), Appeal No. 25-5144 (D.C. Cir.); **(2)** *Abramowitz v. Lake*, Case No. 25-cv-887 (D.D.C.), Appeal No. 25-5145 (D.C. Cir.); **(3)** *Middle E. Broad. Networks (MBN) v. U.S.*, Case No. 25-cv-966 (D.D.C.), Appeal No. 25-5150 (D.C. Cir.); and **(4)** *Radio Free Asia* (*RFA*) *v. U.S.*, Case No. 26-cv-907 (D.D.C.), Appeal No. 25-515 (D.C. Cir.).

The issues in these four cases are similar—although not identical—to some issues here, because USAGM, like USAID, is an independent agency which the Administration has tried to shutter and because the Administration is impounding funds appropriated to USAGM much as it is impounding funds appropriated to USAID.

This introduction summarizes the procedural history—and aspects of the relief granted—in these four cases, all of which were assigned to Judge Lamberth.

### Rulings by Judge Lamberth

In all of these cases, the government argued that either the Court of Federal Claims (CFC), the Merit System Protection Board (MSPB), the Federal Labor Relations Authority, or the Office of Special Counsel has exclusive jurisdiction over the claims asserted—and that district courts, therefore, have none. See *Widakuswara v. Lake* (*Widakuswara I*), 2025 WL 1166400, **9-10 (D.D.C. April 22, 2025). Judge Lamberth rejected that argument in all four cases, finding, instead, a likelihood of district court jurisdiction. *Id.* at **9-11. And he entered preliminary injunctions in all four cases—to keep USAGM and its networks operating while the judiciary resolves constitutional and APA challenges to their dismantling.

1

1.  *Widakuswara* is a case brought by direct hire employees, their unions, and personal services contractors (PSCs), challenging the dismantling of USAGM. *Widakuswara,* Case No. 25-cv-1015, ECF 1. Judge Lamberth entered a preliminary injunction to restrain that dismantling pending an adjudication of the merits. See *id.*, ECF 99 (Exhibit 1 to this brief). The injunction has three provisions. Provision (1) enjoins the defendants to "take all necessary steps to return" all USAGM employees and PSCs "to their status prior to [] March 14, 2025." *Id.* Provision (2) enjoins the defendants to "restore the FY 2025 grants with … Radio Free Asia and [the] Middle East Broadcasting Networks such that" they can provide services required by statute. *Id.* Provision (3) enjoins the defendants to "restore VOA [Voice of America] programming such that USAGM fulfills its statutory mandate." *Id.*

2.  Similar to *Widakuswara*, in *Abramowitz*—brought by plaintiffs who include two PSCs—Judge Lamberth again entered a preliminary injunction. *Abramowitz,* Case No. 25-cv-887 (D.D.C.), ECF 29. This injunction replicates provisions (1) and (3) of the preliminary injunction in *Widakuswara*. Judge Lamberth explained that because the *Abramowitz* plaintiffs were seeking relief that substantially mirrored provisions (1) and (3), he was granting parallel relief for the same reasons. See *Abramowitz v. Lake*, 2025 WL 1176796, at *2 (D.D.C. April 22, 2025).

3.  In the third and fourth cases—*RFA v. U.S.* and *MBN v. U.S*—the plaintiffs (the Networks) are Radio Free Asia (RFA) and Middle East Broadcasting Networks (MBN), which are broadcast networks funded by USAGM. The Networks sought restoration of their FY 2025 grants, the same relief that Judge Lamberth had granted in provision (2) of the *Widakuswara* injunction. *Widakuswara I*, 2025 WL 1166400, at *18. But because the Networks are not parties in *Widakuswara* or *Abramowitz,* they asked Judge Lamberth to enter another injunction,

2

expressly providing them the relief granted in provision (2) in *Wikaduswara* so that they would be able to: **(a)** "enforce [that relief] if necessary" and also **(b)** "participate in any stay-related proceedings," including in the D.C. Circuit. See *RFA*, Case No. 25-cv-907, ECF 24 at 2; MBN, Case No. 25-cv-966, ECF 22 at 2. Judge Lamberth granted their request. *Radio Free Asia v. United States*, 2025 WL 1291342 (D.D.C. April 25, 2025).

### Rulings by the motions panel

The government sought emergency relief from all of Judge Lamberth's preliminary injunction orders, asking a motions panel of the D.C. Circuit to stay them pending appeal. But in doing so the government only sought relief from provisions (1) and (2) of the *Widakuswara* and the parallel injunctions—that is, only from the provisions addressing restoring all direct hire employees and PSCs to their March 14 employment status and reinstating RFA's and MBN's FY 2025 grants. See Appeal Nos. 25-5144 and 25-5145 (D.C. Cir.), Documents # 2113018 at 4 and # 2113019 at 11-23. The government did not ask to stay provision (3) of the *Widakuswara* injunction (or the equivalent aspects of the *Abramowitz* injunction). *Id.* at 4. Accordingly, provision (3)—which requires the defendants to "restore VOA programming such that USAGM fulfills its statutory mandate"—has remained in effect since its entry.

On May 3, 2025, in a split decision, a motions panel of the D.C. Circuit granted the government's requests. The motions panel stayed provisions (1) and (2) of the preliminary injunction in *Widakuswara*, the equivalent of provision (1) in *Abramowitz*, and the entirety of the injunctions in the Networks' cases. See *Widakuswara v. Lake* (*Widakuswara II*), 2025 WL 1288817 (D.C. Cir. May 3, 2025). In staying provision (1), the panel majority reasoned that the district court likely did not have jurisdiction due to the "comprehensive statutory schemes for adjudicating employment disputes with the federal government" and also that the plaintiffs were

bringing a "wholesale" challenge to "an agency's entire program," and therefore could not rely on the Administrative Procedure Act for district court jurisdiction, citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 893 (1990). *Id.* at **2-3 (internal quotation marks and citation omitted). In staying provision (2), the panel majority concluded that exclusive jurisdiction over the Networks' claims rests in the Court of Federal Claims, rejecting the Networks' characterization of their claims as deriving statutory and constitutional not contractual. *Id.* at **3-5. Regarding the risks of irreparable harm and harm to others, the panel pointed to the government's interest in controlling personnel matters, the general principle that loss of employment does not usually constitute irreparable harm, and the difficulty the government might have in recovering funds paid to the Networks if it prevails on appeal. *Id.* at *5.

Judge Pillard dissented from the motion panel majority's order. She rejected the government's argument that the direct-hire employees' claims had to be channeled to administrative agencies while also pointing out that "*there is no scenario* in which the claims of the … *personal service contractors*" could be channeled to those entities. *Id.* at *8 (emphasis added). She also disagreed with the panel majority's conclusion that the Networks' claims could be heard only by the Court of Federal Claims—giving four reasons: (1) "Constitutional claims for injunctive or declaratory relief face no sovereign immunity bar," *id.* at *12; (2) "The type of relief plaintiffs seek is unavailable in the Court of Federal Claims, which has no power to grant equitable relief," *id.* at *13; (3) "No count sounds in contract," *id.*; and (4) "At its core, [plaintiffs'] suit challenges the government's assertion that it may disregard congressional funding directives when it disagrees with Congress's policy choices." *Id.* at * 10. In addition, Judge Pillard disagreed with the panel majority's views of the scope of APA review, irreparable harm, and the public interest. She wrote that: (1) "This case is … not a 'programmatic' challenge

to agency policies," *id.* at *9, but rather a challenge to actions that are "discrete and clear: halting the work of virtually all the employees working at [VOA] and bringing the operation of that station to a halt," *id.*; (2) "[T]he government is unable to identify substantial harm it would suffer," since a restriction on its authority, being in "the nature of injunctive relief," is "unavoidable" and when agency action is "unlawful on a grand scale," appropriate preliminary injunctive relief must have a "commensurate" scope, *id.* at *15; and (3) "Duly enacted [appropriations] legislation, fashioned by Congress and signed by the President, is a strong indicator of where the public interest lies." *Id.* at *16.

### Rulings by the en banc court

Following the motions panel's stays of portions of Judge Lamberth's orders, the plaintiffs in all four of these USAGM cases sought emergency reconsideration from the en banc court, which addressed their requests on May 22 and May 28.

**1.** First, on May 22, 2025, the en banc court denied plaintiffs' motion to reconsider the motions panel's May 7 order staying *Widakuswara* provision (1) and the parallel part of the *Abramowitz* injunction—both of which had required rehiring all direct hire employees and PSCs terminated or placed on leave on or after March 14. See Document #2117031 in Appeal No. 25-5144 (Ex. 2 to this brief). The court also explained that "statements concerning this order will follow at a later time." *Id.*

**2.** On May 28, 2025, the promised statements issued: one from Chief Judge Srinivasan and one from Judge Pillard. See Appeal No. 25-5144, Document # 2117869 (Ex. 3 to this brief). Chief Judge Srinivasan, joined by six other members of the court, wrote to make clear that while provision (1) regarding jobs relief remained stayed, that should not be construed as endorsing the government's assertion that "the district court lacks any authority" under provision (3) to "order

personnel actions beyond those that the [government itself] determines are necessary or appropriate to carry out its statutory mandate." Ex. 3 (internal quotation marks omitted; brackets in original). "Rather, insofar as the issue may arise in further proceedings in the district court, that court presumably would consider it in the first instance." *Id.*

Judge Pillard joined Chief Judge Srinivasan's statement and also wrote separately, for herself, to explain that: **(a)** Per her May 3 dissent from the motion panel's order, she would not have stayed provision (1), which the district court had entered "with full cognizance of and respect for the agency's discretion to decide, within legal bounds, how many employees and personal service contractors it needs to carry out lawful policy reform"; and **(b)** The government's "claim of harm is unpersuasive … [because it] cannot complain of costs it imposes on itself through unlawful action." *Id.* At the same time Judge Pillard noted that she was not dissenting, however, from the en banc court's denial of plaintiffs' request for reconsideration of the stay of provision (1)—because by staying that provision "this court has not limited the district court's remedial options going forward" and "*en banc* review is not a mere error-correction mechanism." *Id.*

**3.**    Also on May 28, the en banc court issued a further order, this time addressing the remaining aspects of the plaintiffs' requests for reconsideration. See *Widakuswara v. Lake* (*Widakuswara III*), 2025 WL 1521355 (D.C. Cir. May 28, 2025) (en banc). In this order, the en banc court granted the Networks' motion to reconsider and vacate the motion panel's May 3 decision to stay the relief in their cases. The en banc court explained that that relief was appropriate because "[a]t this initial stage, substantially for the reasons explained by Judge Pillard" in her dissent from the May 3 panel decision, "the government has not made the requisite strong showing of a likelihood of success on the merits of its appeals." *Id.* at *1

(internal quotation marks and citation omitted).[1] The court also directed the parties in

*Widakuswara*, *Abramowitz*, *MBN*, and *RFA* to submit a proposed schedule for consolidated

briefing on an expedited basis. *Id.* at *2. Judge Katsas, joined by three other judges, dissented,

arguing that the district court did not have jurisdiction to restore the Networks' 2025 grants for

the reasons he had explained earlier—because, in his view, the Networks' claims are purely

contractual and thus subject only to CFC jurisdiction. *Id.* See also *Middle East Broad. Networks,*

*Inc. v. United States* (*MBN*), 2025 WL 1378735, **2-4 (D.C. Cir. May 7, 2025) (Katsas, J.,

dissenting).

## ARGUMENT

### I.    Neither the motions panel's nor the en banc court's rulings are binding on this court.

The rulings issued by the motions panel and by the en banc court in the USAGM cases

discussed above are provisional and interim rulings. They are not binding on this court. They are

rulings on requests for stays "pending appeal." They evaluate only the appropriateness of leaving

injunctions in effect pending full appellate review. As a result, they are not binding rulings on the

merits of the questions they address. See *Merrill v. Milligan*, 142 S. Ct. 879, 879 (2022)

(Kavanaugh, J., concurring) ("To reiterate: The Court's stay order is not a decision on the merits"

and "does not make or signal any change" in existing law); *Widakuswara III*, 2025 WL 1521355,

at *1 ("This order of course does not constrain the ability of the panel that hears the

government's appeals to reach any conclusion following full merits briefing and argument.")

---

[1] The court also denied the *Widakuswara* plaintiffs' request to reconsider and vacate the motion
panel's stay of provision (2), which restores grants to RFA and MBN, reasoning that the
*Widakuswara* plaintiffs' claims were "derivative of" claims of RFA and MBN, who had been
granted that relief. *Id. at* *2.

Importantly for this case, the provisional, non-binding nature of these rulings extends to the statement by the motions panel flagged by this Court in its May 30 minute order calling for this brief, that "the district court likely lacked subject-matter jurisdiction to enjoin USAGM's personnel actions." Indeed, responding to that question, a majority of the en banc court went out of its way to note that its "denial of en banc reconsideration [of the motions panel's stay of provision 1] of course should *not* be understood to accept … the government's assertion" that the district court lacks authority to "to order personnel actions." Ex. 3 (emphasis added) (statement of Srinivasan, C.J.).

The motions panel's and en banc court's rulings are also unpublished. Under this Circuit's rules, that shows that the D.C. Circuit itself "sees no precedential value in [them]." D.C. Circuit Rule 26(e)(2).

II.    **Although not binding on this court, the en banc court's orders are instructive about this Court's subject-matter jurisdiction.**

In its May 3 split decision, the motions panel majority questioned whether plaintiffs' challenges to the Administration's dismantling of USAGM and its networks belong in district court. But by contrast, seven of eleven judges of the en banc court took a different view on May 22 and May 28. They left in place the injunctions related to the Networks' grants. By doing so they concluded that there is a likelihood of jurisdiction. And if there is district court jurisdiction over the Networks' claims, there is likewise jurisdiction over the PSC Association's claims here,[2]

---

[2] In maintaining the stay pending appeal on provision 1 of the *Widakuswara* injunction, the en banc court also left open the possibility that relief might also be available as to direct hire employees, whose claims the motions panel had thought belonged in different administrative fora. PSCs do not have any access to those fora, see *Widakuswara II,* 2025 WL 1288817, at **2-3; *id.* at *8 (Pillard, J., dissenting), and so even if other employees' claims must be litigated in those fora, that is not true of the PSC Association's claims.

which is not changed by the PSC Association's request for preliminary relief reinstating its members.

There are, in addition, two critical distinctions—both with legal consequences—that separate this case from the USAGM cases regarding jurisdiction and the motions panel's conclusion that only the CFC has jurisdiction over the Networks' claims.

First, the statutory appropriations framework for USAID is different from the statutory appropriations framework for USAGM—and that matters because in concluding that claims arising from the dismantling of USAGM were likely within the exclusive jurisdiction of the Court of Federal Claims (CFC), the motions panel relied on the precise wording of the Consolidated Appropriations Act, 2024, Div. F, governing USAGM's appropriations, pointing to that statute's "grants" language as applied to USAGM:

> [T]o enable the United States Agency for Global Media (USAGM), as authorized, to carry out international communication activities *and to make and supervise grants for* radio, Internet, and television broadcasting to the Middle East, $857,214,00.

138 Stat. 735 (emphasis added). Focusing on that "grants" language, the motions panel emphasized that: (1) "the governing appropriations statute allocates specific funding for '*grants'* to" USAGM's networks; (2) those funds "may be disbursed only as *grants*," which USAGM had "promised to pay … in monthly installments," in return for which the Networks "promised to use … to advance statutory objectives"; and (3) those "exchanges of promises" constitute government contracts for Tucker Act purposes, leading to exclusive CFC jurisdiction. *Widakuswara II¸* 2025 WL 1288817, at **3–4 (emphasis added).

By contrast, the relevant statutory language appropriating funds to USAID is different. It provides, for example:

> [T]o carry out the provisions of … the Foreign Assistance Act of 1961, for global health activities, in addition to funds otherwise available for such purposes, $3,985,450,000.

138 Stat. 740. Because the USAID language does not dictate grants, and certainly not grants to any specific entities, a major predicate for the motion panel majority's view in *Widakuswara* that jurisdiction was not likely for USAGM claims *simply is not present here*. Indeed, Judge Katsas, even while dissenting from the en banc court's administrative stay that allowed funds to flow to the Networks, agreed that "the statutes invoked by the networks *would* support jurisdiction over APA claims to *obligate* the disputed funds." *MBN*, 2025 WL 1378735, at *3 (first emphasis added; second emphasis in original). And this same relief is part of what the PSC Association seeks here. ECF 39 ¶¶ (c), (e). The PSC Association's invocation of district court jurisdiction is even stronger than the Networks'.

There is also a second distinction that establishes jurisdiction here. In the USAGM cases, the panel majority viewed the plaintiffs as seeking "specific performance of … grant agreements—a quintessentially contractual remedy." *Widakuswara II*, 2025 WL 1288817, at *4. But here, by contrast, the ultimate request is not to reinstate particular grants or contracts. Rather, the PSC Association ultimately seeks an order directing Defendants to "apportion to USAID the full amount of funds that Congress appropriated to USAID … so that USAID can obligate those funds," and to carry out other "statutorily mandated USAID activities." ECF 39 ¶¶ (c), (e). The PSC Association's request does not involve enforcing discrete grant agreements or individual contracts and so cannot be characterized as a Tucker Act claim that belongs exclusively in the CFC.

For similar reasons, the panel majority's reliance on *Dep't of Education v. California*, 145 S. Ct. 966 (2025), is inapplicable here. See *Widakuswara II*, 2025 WL1288817, at *4. In that case, the plaintiffs sought to enforce their right to particular funds awarded them under particular grants. *Id.* at *13 (Pillard, J., dissenting). Here, by contrast, the PSC Association seeks to enforce constitutional and statutory requirements that are not reduced to particular grants or contracts.

* * * * *

In sum, in the USAGM cases, the en banc majority (seven of eleven judges) concluded that the defendants failed to demonstrate a likelihood of success on their claim that the district court lacked jurisdiction. The court thus sustained preliminary injunctive relief pending appeal. And those cases involved challenges that, while not identical, are similar to the PSC Association's challenges here: namely, challenges to the Executive's authority to dismantle federal agencies or impound funds unilaterally. With its rulings, the en banc court aligned with a substantial majority of judges in other courts, who, alongside Judge Lamberth, have: (1) granted or left in place preliminary relief restraining the Administration's dismantling of agencies, issuing stop work orders, freezing funds, or terminating programs; and (2) rejected, at this stage, arguments that claims in such cases belong before the CFC.[3]

"[W]here Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear." *Webster v. Doe*, 486 U.S. 592, 603 (1988). As Justice Gorsuch explained in

---

[3] See, e.g., *Dep't of State v. AIDS Vaccine Adv. Coalition (AVAC)*, 145 S. Ct. 753 (Mar. 5, 2025) (per curiam) (refusing to vacate a district court's temporary restraining order in a case brought by a group of American businesses and nonprofits challenging the dismantling of USAID); *S. Educ. Found. v. United States Dep't of Educ.*, No. CV 25-1079 (PLF), 2025 WL 1453047, at *5 (D.D.C. May 21, 2025); *Colorado v. U.S. Dep't of Health & Human Servs;* No. 25-CV-00121-MSM-LDA, 2025 WL 1426226, at **6–9 (D.R.I. May 16, 2025); *Ass'n of Am. Univs. v. Dep't of Energy*, No. 25-CV-10912-ADB, 2025 WL 1414135, at **5–7 (D. Mass. May 15, 2025); *Am.*

11

*Axon Enter., Inc. v. FTC,* "jurisdiction conferred by 28 U.S.C. § 1331, in particular, should hold firm against mere implications from other laws." 598 U.S. 175, 208 (2023) (Gorsuch J., concurring). It would be "surprising" if claims raising questions about an agency's "structure or very existence" could not be heard in this court. *Axon,* 598 U.S. at 189.

### III.  Although not binding, the D.C. Circuit's rulings other preliminary injunctions are instructive as to the appropriate scope of relief in this case.

Provision (3) in the *Widakuswara* and *Abramowitz* injunctions, which remains in effect, requires the defendants to "restore VOA programming *such that USAGM fulfills its statutory mandate*" as applied to VOA. Exhibit 1 (emphasis added). Analogously, paragraph (e) of the proposed preliminary injunction here modestly requires defendants to maintain staffing *at levels needed to fulfill statutory mandates*—while leaving the Executive Branch appropriate discretion to determine what those staffing levels should be. Paragraph (e) is appropriately tailored. See

---

*Bar Ass'n v. U.S. Dep't of Justice*, No. 25-CV-1263 (CRC), 2025 WL 1388891, at **4–6 (D.D.C. May 14, 2025); *AIDS Vaccine Advoc. Coal. v. United States Dep't of State*, No. CV 25-00400 (AHA), 2025 WL 1380421, at **2 – 3 (D.D.C. May 13, 2025); *Massachusetts v. Kennedy*, No. CV 25-10814-WGY, 2025 WL 1371785, at **3–9 (D. Mass. May 12, 2025); *Rhode Island v. Trump*, No. 25-cv-128-JJM, 2025 WL 1303868, at **5–7 (D.R.I. May 6, 2025); *The Sustainability Inst. v. Donald J. Trump*, No. 2:25-CV-2152-RMG, 2025 WL 1486978, at **2–6 (D.S.C. Apr. 29, 2025), *stay pending appeal denied*, 2025 WL 1486979 (D.S.C. May 20, 2025); *Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Human Servs.*, 2025 WL 1233674, at **6–7 (N.D. Cal. April 29, 2026), *stay pending appeal denied,* No. 25-808, 2025 WL 1393876 (9th Cir. May 14, 2025); *Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.*, No. 1:25-CV-00097-MSM-PAS, 2025 WL 1116157, at **12–15 (D.R.I. Apr. 15, 2025); *Chicago Women in Trades v. Trump*, No. 25 C 2005, 2025 WL 1114466, at **8–10 (N.D. Ill. Apr. 14, 2025); *Maine v. United States Dep't of Agric.*, No. 25-CV-00131-JAW, 2025 WL 1088946, at *15 (D. Me. Apr. 11, 2025). Notably, other than *AVAC*, these decisions all post-date the Supreme Court's shadow docket per curiam opinion in *Dep't of Education v. California*, 145 S. Ct. 966 (2025), rejecting the suggestion that it requires a different outcome. But cf. *Am. Ass'n of Colleges for Teacher Educ. v. McMahon*, No. 25-1281, 2025 WL 1232337 (4th Cir. April 10, 2025); *Maryland v. United States Dep't of Agric.*, No. 25-1338, 2025 WL 1073657 (4th Cir. April 9, 2025); *Solutions in Hometown Connections v. Noem*, No. 25-cv-885-LKG, 2025 WL 1530318, at * 11 (D. Md. May 29, 2025); *Pippenger v. U.S. DOGE Serv.*, No. 25-cv-1090 (BAH), 2025 WL 1143845 (D.D.C. April 17, 2025); *Massachusetts Fair Housing Ctr. v. Dep't of Housing & Urban Dev.*, No. 25-30041-RGS, 2025 WL 1225481 (D. Mass. April 14, 2025).

also *Somerville Public Schools v. McMahon*, Appeal No. 25-1495, 2025 WL 1576570, *6 (1st Cir. June 4, 2025) (denying the government's motion to stay a similar injunction provision that, rather than requiring the Education Department to restore the status quo ante by rehiring all terminated staff, instead "applies only insofar as it is necessary to restore the Department to the status quo such that it is able to carry out its statutory functions") (internal quotation marks and emphasis omitted).

Paragraph (f) of the proposed injunction here is also appropriately tailored. It will require *temporarily* restoring USAID PSCs and operations to the status quo ante, *pending* Defendants' determination of appropriate staffing levels to carry out USAID's statutory mandates. ECF 39 ¶ (f.). That relief is appropriately pertinent and commensurate—as shown by the D.C. Circuit's recent rulings both in the USAGM cases and in the government's appeal from Judge Jackson's preliminary injunction restraining the dismantling of the Consumer Finance Protection Board (CFPB):

1.  As already discussed, in the USAGM cases, the en banc court majority was explicit that its ruling should not be read as endorsing the government's position that Judge Lamberth cannot order "personnel" actions. See, e.g., Ex. 3 (statement of Chief Judge Srinivasan, joined by six more members of the court). The en banc court has also expressly relied on Judge Pillard's dissent in *Widakuswara II*, which explained the irreparable harm plaintiffs were experiencing, the inadequacy of money damages in the future, the lack of substantial harm to the government from enforcing the preliminary injunction, and the public interest at stake. 2025 WL 1288817, at **14-16.

2.  Similarly, in *Nat'l Treasury Employees Union v. Vought* (*NTEU*), Appeal No. 25-5091 (D.C. Cir.), the motions panel—indeed the same panel that ruled in *Widakuswara* on May 3—

has twice refrained from divesting Judge Jackson of authority to order "personnel" actions to keep the CFPB operational. On April 11, the panel permitted interim injunctive relief requiring defendants to conduct "a particularized assessment" as to whether employees were "unnecessary to the performance of defendants' statutory duties" before RIF'ing them. *NTEU v. Vought,* Document # 2110720 (Ex. 4 to this brief). And on April 28, with the government proposing a RIF involving nearly 90 percent of agency employees, the motions panel lifted even that restriction in part to "ensure[ ] that plaintiffs can receive meaningful final relief should the defendants not prevail on this appeal …." *Id.,* Document # 2113309 (Ex. 5 to this brief).

The record favoring injunctive relief here, including requiring USAID to maintain staffing at levels that will enable the agency to fulfill its statutory obligations, is at least as strong as in the USAGM cases and in *NTEU.* Indeed, in *NTEU* the defendants claimed that they were not shuttering the agency and that they intended to comply with their statutory obligations. *NTEU v. Vought*, Case No. 26-0381 (ABJ), 2025 WL 942772, at *22 (D.D.C. March 28, 2025). By contrast, Defendants make no such representations here. To the contrary, here Defendants have committed: (a) that "Congressional earmarks for programs will not be honored; (b) that "[c]ome hell or high water, USAID will be integrated fully into State by July"; and (c) to the termination of the entire workforce. See ECF 39-1 at 15–16 (discussing Defendants' statements on these points). There can be no dispute about Defendants' intentions here. At least as much as in *NTEU*, preserving the possibility of "meaningful final relief" requires assertive judicial action now.[4]

---

[4] The proposed preliminary injunction here (ECF 39) includes provisions requiring apportioning the full amounts of Congressionally appropriated funds to USAID, refraining from steps to

## CONCLUSION

For all the reasons stated above and in the PSC Association's Opening Brief and Reply Brief (ECF Nos. 39-1 and 49-1), the Court should grant the Association's motion for a preliminary injunction.

Dated: June 6, 2025

Respectfully submitted,

/s/ Joshua Karsh

Carolyn E. Shapiro
Schnapper-Casteras PLLC
200 E. Randolph St., Ste 5100
Chicago, IL 60601
cshapiro@schnappercasteras.com
773-520-7533
*Member of the Illinois bar with a D.C. practice limited to federal litigation. Not a member of the District of Columbia bar.*

Marni Willenson
D.C. USDC Bar No. IL0011
Illinois Bar No. 6238365
Willenson Law, LLC
3420 W. Armitage Ave.,
Ste 200
Chicago, IL 60647
marni@willensonlaw.com
312-546-4910

Joshua Karsh
Mehri & Skalet PLLC
1237 Judson Ave.
Evanston, IL 60202
jkarsh@findjustice.com
773-505-7533
*Member of the Illinois bar with a D.C. practice limited to federal litigation. Not a member of the District of Columbia bar.*

*Counsel for Plaintiff*

---

abolish USAID, restoring public online access to data, restoring the website usaid.gov and the Office of Management and Budget's apportionment website, prohibiting disclosing PSCs' personal identifying information on DOGE websites, and requiring removing that information from DOGE websites—in addition to "personnel" actions, which the D.C. Circuit has repeatedly declined to categorically preclude.