IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PERSONAL SERVICES CONTRACTOR ASSOCIATION,<br><br>     Plaintiff,<br><br>v.<br><br>PRESIDENT DONALD TRUMP, *et al.*,<br><br>     Defendants. | Civil Action No. 1:25-cv-00469 |

**DEFENDANTS' SUPPLEMENTAL BRIEF UNDER MAY 30, 2025 ORDER**

Moving for dismissal of the amended complaint or, alternatively, for summary judgment in the *AFSA* suit, while opposing the preliminary injunction motion in the *PSCA* suit (No. 25-cv-469), Defendants have argued, *inter alia*, that Plaintiffs' claims cannot be addressed by this Court, or any District Court, but rather must be heard by other adjudicative bodies altogether. In particular, claims focused on Federal employment or personal services contracts must first be adjudicated by administrative bodies Congress established for such disputes, and any claims based on grant agreements must be heard by the Court of Federal Claims.

In *Widakuswara v. Lake*, No. 25-5144 (D.C. Cir.), orders last month by a divided motions panel, as modified by the *en banc* Court of Appeals, denied the Government a stay pending appeal centered on arguments about grants by the U.S. Agency for Global Media (USAGM), while maintaining a stay pending appeal centered on arguments about federal employee and personal services contractor claims against that agency. Here, as explained below, that interim appellate disposition reinforces the Government's contentions in the *AFSA* and *PSCA* suits as to federal employee and personal services contractor claims, while leaving unchanged the Government's arguments as to grants, which there is no occasion for reaching here because no Plaintiff is a

1

USAID grantee, and which in any event are supported by ample precedent. (Defendants are filing this supplemental brief in both the *AFSA* and *PSCA* actions.)

## BACKGROUND

The International Broadcasting Act ("IBA") of 1994 tasks USAGM with overseeing multiple federally-funded broadcasting networks, including Voice of America (VOA), Radio Free Asia (RFA), and the Middle East Broadcasting Network (MBN). 22 U.S.C. §§ 6201(3), 6202(c), 6204, 6208. The IBA authorizes USAGM to "make and supervise grants and cooperative agreements for broadcasting and related activities" and "allocate funds appropriated for international broadcasting activities among the various elements of [USAGM] and grantees, subject to reprogramming notification requirements in law for the reallocation of funds." 22 U.S.C. §§ 6204(a)(5), (a)(6). Congress provided that appropriated funds should be "allocated" per a table specifying amounts to be allocated to particular entities, including RFA and MBN. [1]

Executive Order 14238 of March 14, 2025, titled "Continuing the Reduction of the Federal Bureaucracy," provided that "the non-statutory components and functions of" USAGM "shall be eliminated to the maximum extent consistent with applicable law." 90 Fed. Reg. 13043, 13043 (published Mar. 20, 2025). USAGM acting leadership implemented that directive from March 15, 2025 onward, by placing employees on administrative leave, terminating contracts with personal service contractors ("PSCs"), and terminating grants with affiliate networks. *Widakuswara v. Lake*, No. 25-cv-1015, 2025 WL 1166400, at *3 (D.D.C. Apr. 22, 2025). [2]

---

[1] Further Consolidated Appropriations Act 2024 ("FCAA"), Pub. L. 118-47, 138 Stat. 460, 735; *see* Continuing Appropriations Act, 2025, Pub. Law No. 118-83, 138 Stat. 1524 (2024); American Relief Act, 2025, Pub. Law No. 118-158, 138 Stat. 1722 (2024); Congress's Full-Year Continuing Appropriations and Extensions Act, 2025, H.R. 1968, 119th Cong. § 1101(a) (2025).

[2] Multiple sets of plaintiffs challenged those decisions in four cases. In *Widakuswara v. Lake*, No. 25-cv-1015, 2025 WL 1166400 (D.D.C. Apr. 22, 2025), plaintiffs include VOA employees and various employee unions. In *Abramowitz v. Lake*, No. 25-cv-887, 2025 WL

The District Court granted a PI in *Widakuswara*. Provision 1 of that PI, concerning employees and personal services contractors, directed USAGM in pertinent part to "take all necessary steps to return USAGM employees and contractors to their status prior to the [EO] including by restoring all USAGM *employees and personal service contractors*, who were placed on leave or terminated, to their status prior to March 14, 2025." 2025 WL 1166400, at *18 (emphasis added). Provision 2 of that PI, concerning grants, directed USAGM in pertinent part to "restore the [fiscal year] 2025 *grants* with USAGM Networks Radio Free Asia and Middle East Broadcasting Networks." *Id.* (emphasis added). And Provision 3 ordered USAGM to "restore VOA programming" to "fulfill[] its statutory mandate.'" *Id.*

The District Court also that day granted a PI in *Abramowitz*. 2025 WL 1176796, at *1. The court reasoned that the *Widakuswara* PI "encompasses" the relief requested in *Abramowitz*, but granted a separate PI in *Abramowitz* so that the cases could be considered together on appeal. *Id.* at *2. Soon after, the District Court granted PIs in *MBN* and *RFA* that provided those plaintiffs with relief identical to Provision 2 of the *Widakuswara* PI concerning grants. *MBN*, (Apr. 25, 2025) (Doc. 23); *RFA*, (Apr. 25, 2025) (Doc. 25).

On appeal, in *Widakuswara* (D.C. Cir. No. 25-5144) and *Abramowitz* (D.C. Cir. No. 25-5145), the Government moved for stays pending appeal of Provisions 1 and 2 (not Provision 3) of the *Widakuswara* PI. In *MBN* (D.C. Cir. No. 25-5150) and *RFA* (D.C. Cir. No. 25-5151), the Government also moved for stays pending appeal of the PIs. A divided motions panel granted the

---

1176796 (D.D.C. Apr. 22, 2025), plaintiffs include Michael Abramowitz, in his official capacity as VOA's director. MBN and RFA each brought their own suits, *Middle East Broadcasting Networks, Inc. v. United States*, No. 25-cv-966 (D.D.C.), and *Radio Free Asia v. United States*, No. 25-cv-907 (D.D.C.).

Government's stay motions and ordered a stay of Provisions 1 and 2 of the *Widakuswara* PI and a stay of the *MBN* and *RFA* PI. No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025).

The Court of Appeals, *en banc*, by a divided vote on May 7, 2025 administratively stayed the motions panel's stay as to Provision 2, concerning grants. *Middle E. Broad. Networks, Inc. v. United States*, No. 25-5150, 2025 WL 1378735 (D.C. Cir. May 7, 2025) (*en banc*). The *en banc* Court also administratively stayed the *MBN* and *RFA* PIs (which, again, echoed Provision 2 of the *Widakuswara* PI). *Id*. The *en banc* Court did not modify the motions panel's stay as to Provision 1 concerning status restoration of employees and personal services contractors. *See id*.

The *en banc* Court subsequently denied the *Widakuswara* and *Abramowitz* plaintiffs' motion for relief from the motions panel's stay of Provision 1 of the *Widakuswara* PI. 2025 WL 1556440 (D.C. Cir. May 22, 2025) (*en banc*). The *en banc* Court went on to grant, by a divided vote, MBN and RFA's motion for relief from the motions panel's stay on the *MBN* and *RFA* PIs. 2025 WL 1521355, at *1 (D.C. Cir. May 28, 2025) (*en banc*). The *en banc* Court also denied the *Widakuswara* plaintiffs relief as to Provision 2 of the *Widakuswara* PI, concluding that "their claims of irreparable injuries arising from the . . . stay[ of] provision (2) [were] entirely derivative" of RFA's claims. *Id*. at *2. (Further, the *en banc* Court dissolved the administrative stays.)

To sum up: The *RFA* and *MBN* PIs concerning grants remain in effect. But the motions panel's *stay* as to Provision 1 of the *Widakuswara* PI—concerning status restoration of employees and personal services contractors—remains in effect.

## ARGUMENT

I. **The Continued Stay Of The Employee And Personal Services Contractor Provision Of The *Widakuswara* PI Supports Defendants' Arguments As To USAID Employees And Personal Services Contractors**

The *Widakusawara* PI provision requiring USAGM to restore its federal *employees and personal services contractors* is stayed under the D.C. Circuit motions panel decision of May 3,

2025. The motions panel's rationale for the stay of that provision reinforces the arguments Defendants have advanced that the *AFSA* Plaintiffs' employment-based claims, and the *PSCA* Plaintiff's service contract-based claims, must be channeled through the pertinent procedures: As to federal employees, those procedures are set by the Civil Service Reform Act of 1978 ("CSRA"), the Federal Service Labor-Management Relations Act ("FSL-MRS"), and the Foreign Service Act ("FSA"); as to personal service contractors, those procedures are set by the Contract Disputes Act of 1978 ("CDA"). Defs. Mem. 18-27 (AFSA Doc. 70-1); Defs. Reply 3-7 (AFSA Doc. 83); Defs. Mem. 8-15 (PSCA Doc. 45).

In light of the statutory schemes providing "exclusive procedures by which" federal employees and personal services contractors "may pursue employment related claims," the APA is not available to remedy alleged adverse personnel decisions, including systemwide challenges to agency policies that implicate large-scale personnel matters. *See Widakuswara*, 2025 WL 1288817, at *2. The motions panel's stay of the interim relief the District Court devised as to the employment- and personal service contract-related claims in *Widakuswara* supports the Government's similar arguments here—namely, that the employment- and personal service contract-related relief *AFSA* and *PSCA* Plaintiffs seek is unavailable from this Court. Those claims must be channeled through the appropriate administrative bodies statutorily established for such disputes. *Compare* AFSA Pls.' Prp. Order, Doc. 51-25 at 2-3, *and* PSCA Pls.' Prp. Order, Doc. 39-26 at Item (e), *with* PI Order, *Widakuswara*, 2025 WL 1166400, at *1 (D.D.C. Apr. 22, 2025) (ordering USAGM to reinstate and rehire all employees and personal service contractors to their pre-litigation status).

This Court may rely on the *Widakuswara* motions panel's grant of the stay as to the employment- and personal service contract-based claims as a persuasive authority confirming the

validity of Defendants' arguments. This Court need not decide whether the pertinent portion of the motions panel decision is a precedent. The motions panel did not designate its decision for publication as precedent. *Cf. D.C. Circuit Handbook of Practice and Internal Procedures* 43 (2024) (issuance of "unpublished disposition means that the Court sees no precedential value in that disposition. *See* D.C. Cir. Rule 36(e)(2)."). There is no need for this Court to go further, given that Defendants have identified all of the pertinent pre-*Widakuswara* precedents in their briefing.

## II. The *En Banc* Court's Stay Denial Does Not Preclude This Court From Ruling For Defendants On Any Grant-Based Claims, Which Plaintiffs Here Lack Standing To Raise In Any Event

The denial of the stay of the *Widakuswara* PI "is not a decision on the merits of the underlying legal issues," and hence is not a binding precedent on the subject-matter jurisdiction argument that the Government has raised insofar as the Court reaches any grants-based claims in light of the Tucker Act. *See Ind. State Police Pension Tr. v. Chrysler LLC*, 556 U.S. 960, 960 (2009). Hence, the *en banc* Court's denial of the Government's stay motions, not designated for publication as D.C. Circuit precedent, is not a binding precedent requiring rejection of the Government's challenge to subject-matter jurisdiction over the Plaintiffs' efforts to seek grant-related relief in *PSCA* and *AFSA*.

It bears emphasis at the outset that although *AFSA* and *PSCA* Plaintiffs via their proposed orders *attempt* to seek injunctive relief concerning USAID grants, none of them has Article III or third-party standing to seek such relief, because none of them is a USAID grantee. Oxfam lacks Article III or third-party standing as to USAID funding instruments, including grants. Defs. Mem. 29-31 (AFSA Doc. 70-1). Indeed, *AFSA* Plaintiffs today highlight Oxfam's lack of any grants from USAID (indicating lack of standing to litigate the disposition of such grants) as a purported reason Oxfam may seek injunctive relief to restore agency "expertise and logistical assistance"

Oxfam "relies on." Supp. Br. 8-9 (AFSA Doc. 88). For its part, PSCA shares that deficiency: PSCA is not itself a USAID contractor; rather, it is the members of PSCA that receive funding through their personal service contracts (which are distinct from grants). *See* Defs. PI Opp. 15-17 (PSCA Doc. 45).

In any event—even apart from the Article III and third-party standing problems that would preclude affording grant-related relief in *AFSA* and *PSCA*—any grant-related claims seeking monetary relief properly proceed under the Tucker Act. *Widakuswara* does not require otherwise. Although the *en banc* Court did examine the Government's "likelihood of success on the merits" as to the argument that the District Court lacked subject-matter jurisdiction over the grant-restoration claims in *Widakuswara* in light of the Tucker Act, the *en banc* Court clarified that its stay assessment "does not constrain the ability" of the merits panel subsequently "to reach any conclusion following full merits briefing and argument." 2025 WL 1521355, at *1.[3]

In that regard, the Government's subject-matter jurisdiction arguments in *AFSA* and *PSCA* are different from those in *Widakuswara*. The *AFSA* and *PSCA* suits concern underlying statutes authorizing foreign assistance programs that generally authorize the Executive Branch to provide foreign assistance through particular programs, but that do not generally require the provision of specific funds to specific recipients. To the contrary, Congress has generally provided that the President and the Secretary of State have significant latitude to determine how best to provide foreign assistance to ensure that those programs best achieve foreign aid goals and align with the

---

[3] Additionally, the *en banc* Court reasoned that denial of the stays was warranted regardless "whether the government ultimately prevails[,]" because the grantee networks' fact-intensive irreparable harm showing made "it unlikely that they could recover" absent a stay. *Id*. But in *AFSA* and *PSCA* the irreparable harm assertions are based on different facts particular to these suits, and as this Court concluded earlier in each suit, Plaintiffs did not demonstrate irreparable harm—let alone harm sufficient to overcome their deficiencies as to success on the merits. *AFSA*, 2025 WL 573762, at *3-7 (D.D.C. Feb. 21, 2025); *PSCA*, Tr. Mar. 6 at 7:1-11:6.

President's foreign policy. *See, e.g.*, 22 U.S.C. §§ 2382(c), 2395(a). And for many specific programs, Congress has expressly given the President discretion to provide assistance on such terms and conditions as the President determines. Moreover, the appropriations statute in many instances simply provides that Congress is appropriating large undifferentiated sums for various activities, such as "to carry out" specified provisions of the Foreign Assistance Act, 138 Stat. at 742, or "to meet refugee and migration needs," 138 Stat. at 744. And even where Congress included more specific directions in the appropriations statute, those directions often restrict the manner in which, or the purposes for which, the funds could be spent. *See, e.g.*, 138 Stat. at 740-41, 742. In general, they do not provide affirmative, unequivocal commands to provide specific funds on a specific timetable for specific recipients. So, contrary to PSCA's analogy to Provision 3 of the *Widakuswara* PI, there is no equivalent "statutory mandate" concerning grants that the Court could order USAID to "fulfill[]." Supp. Br. 12-13 (PSCA Doc. 50).

The authorizing provisions of the IBA and the corresponding appropriations provisions (on which the circuit judge who dissented from the motions panel opinion in *Widakuswara* relied) are *not* akin to those from which these suits arise. *See* 2025 WL 1288817, at *11 (Pillard, J., dissenting) (relevant statutes both established entity plaintiffs and "required allocation of funds to those specific, named entities"). Plaintiffs in *AFSA* and *PSCA* cannot contend that the text of any authorizing or appropriations statute requires that they receive federal funds. It is only USAID's choices that result in such receipt of funds by grantees (which, again, do not include Plaintiffs here). Indeed, in *AFSA*, not even Oxfam—the Plaintiff added to that action with an alleged interest in the termination of USAID grants and related contracts—has contended that it directly receives federal funds from any Defendant. Defs. Mem. 29-31 (AFSA Doc. 70-1). And neither the Foreign

8

Assistance Act nor the FCAA directs USAID to make particular payments to any of the Plaintiffs in *AFSA* or *PSCA*. Defs. Mem. 3-6 (AFSA Doc. 70-1); Defs. PI Opp. 2-4 (PSCA Doc. 45).

Hence, in light of the Tucker Act, insofar as the *AFSA* or *PSCA* plaintiffs seek restoration of foreign-assistance grants, they must bring those claims under the terms of those grants. Defs. PI Opp. 8-15 (PSCA Doc. 45). Notably, Plaintiffs in both suits explicitly invoke contracts or grants as a basis for monetary relief: The *AFSA* Plaintiffs seek an order directing USAID to "pay[] all due or overdue invoices in connection with any" funding agreement. Prp. Order at 2 (AFSA Doc. 51-25). And the *PSCA* Plaintiff demands an order that Defendants "[a]pportion to USAID the full amount of funds . . . so that USAID can obligate those funds for[] . . . contracts, grants, awards, and projects . . . ." PI Mot., Item 1(c) (PSCA Doc. 39). So the APA review they seek is unavailable to provide them an order "'to enforce a contractual obligation to pay money . . . .'" *Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025) (per curiam) (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)).

Moreover, although the Government will make merits arguments in due course in *Widakuswara*, the *en banc* Court perceived the Government as lacking arguments *on the merits* of the grant decisions for purposes of the stay motion. 2025 WL 1521355, at *1. Yet here, Defendants in *AFSA* and *PSCA* have raised numerous alternative arguments why Plaintiffs' grant-based claims fail on the merits.

\*    \*    \*    \*    \*

The interim disposition in *Widakuswara* reinforces Defendants' contentions as to the employment- and personal services contract-based claims here, and does not undermine Defendants' contentions as to the grant-based claims here. Hence, for the reasons Defendants stated, the Court should dismiss the *AFSA* amended complaint, or grant summary judgment to Defendants while denying it to Plaintiffs. And the Court should deny the PI in *PSCA*.

9

Dated: June 6, 2025                                  Respectfully submitted,

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
Director
Federal Programs Branch

*/s/ Richard Giles*
Richard Giles (WY Bar No. 8-7222)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Phone: (202) 616-8482
Email: Richard.C.Giles@usdoj.gov

*Counsel for Defendants*